## CHICAGO BUILDING AND MANUFACTURING CO. *v.* TALBOTTON CREAMERY AND MANUFACTURING CO.

1. If upon the hearing of a demurrer to a petition the plaintiff make profert of a written contract which is the foundation of the suit, and produce and read the same, it thereby becomes a part of the petition and may be considered on the demurrer, notwithstanding it is not set forth in the petition or exhibited thereto. The better practice, however, is to set forth the instrument in the petition or attach it thereto as an exhibit.

2. Where a contract for the erection and equipment of a factory is made with a number of natural persons, who agree therein to obtain a charter for a corporation, in which each of such persons shall be interested to the extent of his individual liability on the contract, and such charter is subsequently obtained and the corporation organized, a right of action upon such contract arises, after the completion of the work undertaken, against the corporation, and the right of action against the individuals ceases. In such a case the contractor would have a lien upon the factory and its equipment, and a claim of lien setting forth that such a contract had been made with the individuals (naming them) and with the corporation, would be sufficient to authorize a foreclosure suit against the corporation alone.

3. Contractors, materialmen, machinists, and manufacturers of machinery do not by the taking of personal security waive the lien given them under section 2801 of the Civil Code.

Argued October 20, 21, — Decided November 26, 1898.

Foreclosure of lien. Before Judge Butt. Talbot superior court. March term, 1898.

*J. J. Bull, A. J. Perryman, Glenn & Rountree* and *J. A. Noyes,* for plaintiff. *Brannon, Hatcher & Martin,* for defendant.

COBB, J. The petition of the Chicago Building and Manufacturing Company in substance alleged: It is a corporation, incorporated under the laws of the State of Illinois, and is a manufacturer, machinist, builder and contractor, and furnisher of materials. In 1895 it contracted with certain persons named, and the Talbotton Creamery and Manufacturing Company, all of said county. After the contract was made, the parties named were incorporated under the laws of Georgia as the Talbotton Creamery and Manufacturing Company. The contract was made with the persons named and the company, for the purpose of building a creamery on a described lot in the town of Talbotton. The building was erected and fully equipped for a cream-

ery at and for the sum of $3,950, all of which has been paid except $1,359.35; and for this sum the petitioner has taken no personal security. In June, 1895, petitioner completed the building and creamery equipment and machinery, in compliance with its contract, and thereupon the defendant became indebted to it in the sum last above mentioned, besides interest. On September 25, 1895, and within three months of the completion of the work required under the contract, petitioner filed its claim of lien against the individual subscribers and the corporation, on the building and machinery furnished by it and upon the lot upon which the building was situated, and the same was recorded in the office of the clerk of the superior court as required by law. The action is commenced within twelve months from the time the debt which is the foundation of the lien became due. The prayers are, that a lien on the building, machinery and lot be set up and established, and that process issue against the Talbotton Creamery and Manufacturing Company. The defendant demurred to the petition, on the ground that the allegations were insufficient in law to authorize the foreclosure of the lien as claimed, or to authorize a recovery in the suit. The court sustained the demurrer and dismissed the petition. The bill of exceptions sets out a copy of the contract between the parties, and states that in the argument upon the demurrer the defendant's counsel used the contract "as a profert." The order of the judge sustaining the demurrer contains this clause: "Plaintiff's counsel made profert of the written contract which was the foundation of the suit"; and it appears from the order that the judge treated the contract as a part of the petition. The contract referred to was, in substance, as follows: The plaintiff is referred to in the contract as the party of the first part, and the persons named in the petition as defendants are referred to as the party of the second part. The purpose of the contract is to provide for building, erecting, completing, and equipping for the party of second part a butter and cheese factory at or near Talbotton, Georgia. The character of the building and equipment of the factory is fully set forth. The party of the second part "agrees to select, describe, and furnish at its own expense, within ten days from

the date of this contract, suitable and reasonably level land with good title, and water ready to connect pump to for the use of said factory, and agrees within the same time to appoint an executive committee with full authority to represent second party's interest while first is discharging said contract." The party of the first part agrees to erect a butter and cheese factory as set forth in the specifications, for $3,950, payable in cash when the factory is completed. The party of the second part agrees to pay that amount when the factory is erected, and the building is to be completed within ninety days after the amount above mentioned is subscribed. As soon as that amount is subscribed, and within a reasonable time thereafter, the party of the second part agrees "to incorporate under the laws of the State, as therein provided, fixing the aggregate amount of stock at not less than the amount subscribed, to be divided into shares of $100 each. Said share or shares, as above stated, to be issued to the subscribers hereto in proportion to their paid-up interest herein, and it is herein agreed that each stockholder shall be liable to the corporation only for the amount subscribed by him and no more." Subscriptions to any amount in excess of the amount above named are authorized by the contract, but all such subscriptions "shall belong to the first party until the full contract price has been fully collected therefor. The remainder of the subscriptions, after the first party has been fully paid, is the property of the second party, and may then be by the second party also collected and used as working capital." The contract is signed by the plaintiff company, and also by the persons named in the petition, in the following way:

| Names of subscribers. | No. of shares. | Amount of stock after incorporation. |
|---|---|---|
| E. H. Spivey | 1 | $100.00. |
| W. T. Cosby | 2 | $200.00. |
| W. C. Turner | 1/2 | $50.00. |

Attached to the contract is a communication addressed to the plaintiff, signed by four persons styling themselves the "regularly appointed executive committee" of the party of the second part, in which it is stated that a described tract of land has been selected by them upon which to erect the butter and

cheese factory, and that they have accepted the same as suitable for the purpose, and agree to indemnify plaintiff against all adverse claimants, and, authorize the plaintiff to proceed to erect the factory thereon according to the contract.

1. The first question to be determined is: Did the court have a right to consider this contract in passing upon the demurrer filed to the petition? The contract is the foundation of the action. It is neither embodied in the petition, nor exhibited thereto, nor is a technical profert of the same made in the pleadings. It appears, however, distinctly from the record, that on the hearing an oral profert of the contract was made; that it was produced; that it was read; that counsel for both parties argued the case upon the theory that the contract was a part of the pleadings, and that the ruling by the court was also based upon this assumption. While the contract did not come before the court and become a part of the record, in compliance with the technical rules of profert and oyer as they existed at common law, since the day of written pleading, still we are of the opinion that under the liberal, and we might say loose, practice which is allowable in this State, the contract was properly before the court, became a part of the petition, and was therefore properly considered by the court in passing upon the demurrer. While at common law profert was required only in cases where the party claimed or justified under a deed, and was not necessary where the suit or defense was founded upon an instrument not under seal, still the rule in this State requires that profert should be made of any note or other instrument which is the foundation of the action, whether the same be under seal or not. Steph. Plead. 67, 437; *Smith* v. *Simms*, 9 *Ga.* 418. It seems, therefore, that in the present case the plaintiff should have set out in his petition the substance of the contract which is the foundation of the action, or he should have exhibited to his petition the material parts of the same, or made profert of it in the pleading, that is, after referring to the contract, used the formula, "which is here to the court shown"; and in the latter case the defendant would have had a right to demand oyer of the instrument, that is, that the same be filed for inspection and subject to be

treated in the after-progress of the case as embodied in the petition itself.    At common law, in all cases where profert of an instrument was required to be made and was made, and oyer was demanded and the instrument read in the days of oral pleading, or filed for inspection since the day of written pleading, the instrument which was the subject of the profert became, after the granting of oyer, a part and parcel of the pleading which contained the profert.    Gould's Plead. (5th ed.) 408, 409.    That author also says:   " He who is entitled to, and obtains, *oyer* of a deed, is not bound to take any notice of it in his pleading:   The object of granting it being merely to *enable* him to do so, at his pleasure.    He *may*, however, after reciting the instrument, *verbatim*, on the record, avail himself of any advantage, which any part of it, not set out by his adversary, may afford him.    The mode in which such advantage may be taken, may be either by pleading, or demurring, as the case may require.    .    .    If the instrument sued upon, or upon which the defense is founded, is, *upon the face of it, void*, either from illegality, or otherwise; or is, from any other cause, *insufficient, upon the face of it*, to maintain the demand or defence founded upon it; or if there is any material *variance* between the instrument, as recited on *oyer*, and the description of it in the pleading of him who has made *profert* of it; the adverse party may *demur* to the pleading in which the *profert* is made. .   .   .    The deed, as recited, is considered as parcel of *the pleading* of him who pleads it; and, consequently, has the same effect, as if it had been set out, *verbatim, in his own pleading.*" Ibid.   418, 419.    See also Chit. Pl. *450–451; Jeffery *v.* White, Doug. 476; Snell *v.* Snell, 7 Dow. & R. 257; Thacker *v.* State, 11 Md. 322.    There is nothing in this ruling to conflict with the decisions made in the cases of *Const. Pub. Co.* v. *Stegall*, 97 *Ga.* 405, and *Aug. & Sav. R. Co.* v. *Lark*, Id. 800. In those cases the court attempted to consider upon demurrer written statements of facts which had not been made, in any way, a part of the pleadings, and which could not become a part thereof except by an allegation in the petition.    It was in those cases held, that upon demurrer to a petition the court could not look outside of the petition.    And we so hold here;

the effect of the ruling now made being simply that a contract. which is the foundation of the action, but which is not actually set out in the petition, becomes nevertheless, in contemplation, of law, a part of the same, when a proceeding equivalent to a. demand of oyer on the one side and the granting of oyer on the other has been practically accomplished in the progress of the case.    While it is the better practice to set out the contract. in the petition, in substance, or to exhibit it thereto *in hæc· verba*, we think, nevertheless, that what was done in the pres-- ent case made the contract so much a part of the petition that, the court could look to it in the determination of the demurrer..

2.  Treating the contract as a part of the pleading, it is nec-- essary to determine whether the petition sets forth a cause of action, as against a general demurrer.  The petition alleges, in substance, that the plaintiff had made a contract with certain named persons for the erection of a building at a specified cost; that the liability of each of the persons was determined by the- amount set opposite their names; that these persons agreed to- have themselves incorporated with a capital stock of not less- than the amount set forth in the petition as the price of the- building to be erected; that the capital stock was to be divided. into shares of $100 each, and each person should be a stock-- holder in the corporation to the extent of the amount subscribed by him in the contract; that the individuals who had made- the contract had complied with the stipulations and had be-- come incorporated in the manner agreed upon; and that the- plaintiff had fully complied with the terms of the contract. The petition also contains allegations showing a compliance with the requirements of law, necessary to establish a lien in. favor of the plaintiff upon the real estate which has been im-- proved by its performance of the contract.   It seems to us that, as against a general demurrer, the plaintiff has stated a cause of action.   It is true that the suit is against the corporation and. not against the individuals who subscribed to the contract, but. the existence of the corporation sued was in contemplation of the parties when they made the contract; and taking the contract as a whole, it was clearly the intention of both parties thereto that the plaintiff, when it complied with its contract, and the

amount specified by the contract became due, should have a right to proceed against the corporation which was to be formed to carry out the enterprise contemplated by the contract; and if the party of the second part failed, neglected, or refused to have themselves incorporated, that their liability to the plaintiff was to be as individuals, each one being responsible for the amount set opposite his name. It being alleged that the corporation has been formed in conformity to the contract, it would seem that the right of action of the plaintiff against the individuals does not now exist, and that the only right which it has is to sue that artificial person which the contract provided for, and which when brought into being was to take the place of the natural persons who had agreed to form it. The liability of the individual to the plaintiff is the same in each case — direct in one contingency and indirect in another. If no corporation was formed, the individuals were directly responsible to the plaintiff for the amount set opposite their names in the contract. If the corporation was formed, it would be liable to the plaintiff, and the individuals who formed it would be responsible to the corporation as for a subscription to capital stock represented by the amounts set opposite their names in the contract. The allegation being that the corporation had been formed pursuant to the contract and in conformity to law, the suit was properly brought against the corporation, and the claim of lien which was filed and recorded, notwithstanding it was against both the individual subscribers and the corporation, was in substantial compliance with the contract and the law in relation to such matters. The suit being against the corporation, that part of the claim of lien which refers to and enumerates the individual subscribers may be properly treated as surplusage. The petition set forth a cause of action, which, if established by evidence, would authorize a judgment setting up a lien upon the property described in the pleading.

3. It is contended, however, that the demurrer was properly sustained, because it appeared from the face of the petition that the plaintiff had taken personal security for its debt, and was therefore not entitled to a lien under the law. In support of this contention it is urged that that part of the con-

tract which provides that additional subscriptions may be secured by the party of the second part, and that they shall belong to the party of the first until the amount due is fully paid, is a taking of personal security. Even if this amounts to a taking of personal security, we do not think it affects the right of the plaintiff to claim a lien. The contract contains no express waiver of the lien, and nothing therein could be properly construed as an implied waiver. It has been held that while it may be that mechanics who have taken personal security thereby waive their right to a lien, materialmen have a lien as well when they take personal security as when they do not. *Ford* v. *Wilson,* 85 *Ga.* 109, 115. The plaintiff sues as a manufacturer, machinist, builder, contractor, and furnisher of material, and the lien given by the statute to such persons is placed upon the same footing as the lien given to materialmen, and is therefore not affected by the taking of personal security. Civil Code, § 2801.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*