14210. ODUM *v.* SOUTH ATLANTIC CASKET CO. *et al.*
14211. WEEKS *et al. v.* ODUM.

A corporation is a separate and distinct entity from copartners under whose trade name it is chartered and organized, though its entire stock be owned by them.

A corporation can not lend its credit or become liable on contracts or for debts of others without express authority from its charter.

A new partner is not liable for obligations of the old firm where not assumed by him for a consideration and in accordance with the requirements of the statute of frauds.

The petition in this case, in which it is sought to recover for services in selling stock and procuring capital for a proposed corporation, is not subject to demurrer on the ground that the plaintiff seeks to recover on an express contract and on a quantum meruit in one and the same count. The allegations, taken as a whole, make a suit on an express contract.

Having laid the case upon an express contract, the plaintiff must recover, if at all, upon the terms of the contract, no matter what he may estimate his services to be worth.

The court did not err in sustaining the general demurrer of the South Atlantic Casket Company and Allen W. Jones, nor in overruling the general and special demurrers of John F. Weeks and J. Elmo Weeks.

DECIDED APRIL 11, 1923.

Petition for accounting, etc.; from Chatham superior court — Judge Meldrim. October 30, 1922.

*Oliver & Oliver,* for plaintiff. *Saussy & Saussy,* for defendants.

LUKE, J. This suit was filed in Chatham superior court by

Guy B. Odum, who in his petition alleged as follows: The South Atlantic Casket Company is a corporation organized and existing under the laws of the State of Delaware, with its office and principal place of business in Savannah, Chatham county, Georgia. John F. Weeks and J. Elmo Weeks are residents of Savannah, Chatham county, Ga. Allen W. Jones is a resident of Richmond county, Ga., but is engaged in business in Chatham county, Ga., and is largely interested in the South Atlantic Casket Company above named. The defendants, John F. Weeks and J. Elmo Weeks and Allen W. Jones, individually and as copartners, and the South Atlantic Casket Company, a corporation, are indebted to petitioner in the sum of $100,000, by reason of the following facts: During the month of March, 1921, the defendants John F. Weeks and J. Elmo Weeks were engaged in running the South Atlantic Casket Company as a copartnership under the name and style of "The South Atlantic Casket Company." The said South Atlantic Casket Company was engaged in the manufacture of funeral and undertaking articles and was doing a rather large business in the State of Georgia and in surrounding States. The said copartnership purported to own at that time considerable property, consisting of real estate, upon which the building, improvements, and machinery were situated, of the approximate value of $100,000. The defendants John F. Weeks and J. Elmo Weeks, in the operation of said business, because of injudicious management, purchases, and administration of the business, became very seriously involved financially, and during the early part of the year 1921 owed large debts of approximately $160,000. The defendants had reached such a point in their operations that it was impossible to finance the business; their credit had become impaired and lost; the banks refused to advance further loans, and the people from whom they had been purchasing materials were calling upon them for payment; the lumber concerns refused to make further shipments except for cash. The defendants and their business were paralyzed financially and insolvent, and had it not been for the facts hereinafter set forth, and the financial assistance which was discovered and obtained by petitioner, the creditors of the defendants would have placed the concern in the hands of a receiver or in bankruptcy.

While the defendants John F. Weeks and J. Elmo Weeks and

South Atlantic Casket Company were thus in an insolvent condition, the two first named defendants employed petitioner to secure financial aid and to sell stock in the proposed corporation. It was proposed and represented to petitioner that the defendants John F. Weeks and J. Elmo Weeks would incorporate the South Atlantic Casket Company with a capitalization of $250,000. It was understood and represented by defendants that their business would have to cease unless assistance in the shape of new capital was obtained. Through lack of working capital they were unable to take advantage of the good will and the trade which they had established prior to the proposed corporation. They were compelled to call their salesman in from the territory in order to reduce expenses, and at the same time to enable them to finance their operations. While matters were in this condition and the defendants were faced with bankruptcy unless new capital were obtained, petitioner was employed by the defendants for the purpose of assisting in obtaining new capital. One manner in which he was to obtain new capital was by the sale of stock in the proposed corporation. A prospectus of said corporation was delivered to him by the defendants John F. Weeks and J. Elmo Weeks for the purpose of advising purchasers of stock of the proposition in which they were to become interested. A copy of said prospectus is hereto attached and marked " Exhibit A." Petitioner was not employed upon any written agreement, but it was understood that he was to sell stock in the proposed corporation, or otherwise to get capital interested therein, and was to receive ten per cent. of the par value of the stock which they sold or of the capital which they interested in the concern. Petitioner was given a drawing account to cover living and traveling expenses, drafts to be drawn at the end of each week, and after petitioner had actually begun his labors in behalf of defendants he did for many weeks actually draw upon defendants for such expenses, and the drafts were paid. While thus employed by the defendants for their benefit and for the benefit of the corporation, which was subsequently organized, petitioner sold a great deal of stock, altogether 248 shares of stock to various persons, who were ready, able, and willing to buy, and who, petitioner believes, actually bought stock in the corporation. A list of the purchasers discovered by petitioner, showing the amount of stock purchased,

the par value thereof, and the amount of 10% alleged to be due to petitioner thereon, is attached and made a part of this petion and marked "Exhibit B." The signed subscriptions to the capital stock of the South Atlantic Casket Company, a proposed corporation, were sent in to the defendants and received by them. Petitioner was not permitted to collect any money from prospective purchasers, being strictly instructed not to do so. Petitioner therefore received no money from the purchasers at the time of obtaining the subscriptions. Petitioner is advised and believes that the defendants were subsequently paid in whole or in part for the said capital stock sold by petitioner; but, although petitioner has demanded from the defendants a statement of the amounts due, such statement has been refused and no payments have been made whatever.

While petitioner was thus engaged on the road in selling stock for the defendants the financial difficulties and embarrassments of the defendants continued; it was impossible for the defendants to obtain material for the manufacture of their products; they could not obtain lumber for the manufacture of caskets and other undertaking stuff. Petitioner was therefore instructed to visit various lumber manufacturing concerns, in an effort to obtain shipments of lumber in exchange for stock, and, acting upon the instructions of his employers, he undertook to make such exchanges. In company with another employee and salesman he visited the Zitcraft Lumber Company in Bulloch county and induced this company to ship a carload of lumber to the defendants with the understanding that satisfactory arrangements should be made whereby payments should be made in stock. The value of this carload of lumber was approximately $250; but petitioner has been unable to get any information from the defendants relative to its actual payment or the manner in which it was paid. Petitioner then visited the Hilton Lumber Company at Pineora, Ga., and would have been able to do business with this concern had it not been for the fact that the defendants then owed to this concern unpaid bills, and they were unwilling to ship any more lumber to the defendants under the circumstances. They also visited various other lumber concerns but were unable to complete any arrangements with these concerns. At this time the affairs of the defendants and the South Atlantic Casket Company were acute; they had reached the

limit of their resources and were practically unable to do more business; they were unable to buy any lumber except small purchases on the local market, delivered by drays and paid for in cash. Even their activities in this line were becoming less and less, and defendants had shut the factory down and were running half time only twenty-five per cent. of their usual working force. They found it practically impossible to meet their pay-rolls, and they therefore urged upon petitioner and his companion the necessity for the utmost activity in their efforts to secure financial assistance, telling them, " If you don't get us some money, it will all be over." At this point the defendants advised petitioner that if they could get them a little lumber, they could then make incomplete shells, òr knock-down shells, which they could ship to Alabama and sell under the market, and thus obtain ready cash to run a little longer. They impressed upon petitioner that if they could trade stock for lumber in sufficient amounts they would finally be enabled to work out their difficulties.

While matters were in this acute, distressing, and bankrupt situation, petitioner and his companion salesman discovered, at Midville, Ga., A. W. Jones, a man of large means and unlimited credit, operating a large lumber-mill and more than able to furnish lumber for the operation of defendants' factory. Petitioner discovered the said A. W. Jones, who was able to invest money in the concern, and subsequently ready and willing, and did invest large capital in the concern. Petitioner first saw the son of A. W. Jones, and succeeded in getting the son interested in the proposition. The same afternoon, after a lengthy conference, he succeeded in seeing A. W. Jones, and presented the proposition to A. W. Jones, seeking an exchange of lumber for stock in the proposed corporation. They even went so far as to advise the said Jones that if he was unwilling to make full payment for his lumber in stock, the defendants would pay one half in stock and one half in cash as soon as they could run sufficiently to accumulate the means to pay therefor. The said A. W. Jones became very much interested in the matter, and, after a longer conference, lasting the whole of an afternoon, advised petitioner that he would think the matter over and that he would see him later. Petitioner returned to his other efforts to sell stock in the concern, but came back to see A. W. Jones two days later. At this

conference Mr. Jones went into details as to what the capacity of the factory was, what lumber would be demanded to run the factory, how it should be dry-kilned at the factory, the financing prospects of the organization, and whom he should obtain his information from. Petitioner referred Mr. Jones to Mills B. Lane, of the Citizens & Southern Bank. Jones advised petitioner that he would be in Savannah in a few days and take the matter up with Mr. Lane, and that if Mr. Lane would give him a letter of introduction to the South Atlantic Casket Company he would be sufficiently interested to call upon the officers of the company and make such investigations as were necessary. If he did not obtain a letter of introduction from the Citizens & Southern Bank, he would not interview them, and petitioner might consider that he was not interested. Petitioner then notified the defendants what to expect from Mr. Jones.

On the appointed day Jones went to the factory and had quite a lengthy conference with both John F. Weeks and J. Elmo Weeks. Petitioner was present, but the conference between Jones and both the Weeks brothers was behind closed doors for several hours, and petitioner had no way of determining what developed during this conference. However, he was advised by John F. Weeks that all prospects were favorable, and Weeks appeared very much elated over the prospects of Jones financing the corporation, and asked petitioner, if it became necessary for defendants to reduce petitioner's commission on any large sum that Jones might invest, would petitioner agree to it. Petitioner advised them that he would not. Jones then left for Florida and petitioner again began to sell stock. Jones wanted to get as much stock placed as they possibly could. Petitioner was then advised not to sell any more common stock. For several days nothing more was heard from Jones or done with him, but the Weeks brothers again sent petitioner to Midville to see Jones. At this conference between petitioner and Jones, Jones stated that he had plenty of lumber to put into the concern and could finance the matter, and had a railroad to ship the lumber over. He called his son in to ascertain what quantities of pine, cypress, and other lumber he would be able to furnish to the factory. Jones stated that he could not get definite information from the Weeks brothers, and for petitioner to furnish him a financial statement of the company. Petitioner

called John W. Weeks over the telephone, and Weeks brothers had a statement prepared and mailed to petitioner, who carried it to Jones. After an examination of the statement by Jones, he said he would have to have more definite information than the statement furnished, as it was only a trial balance, and did not give the necessary details, and that he would have to "squeeze the water" out of it before he could come down to facts. During the entire afternoon Jones talked with petitioner and inquired as to how much stock had been sold in the concern, and complimented petitioner on his ability during depressed conditions to interest any one in the purchase of stock in an insolvent concern. Petitioner advised him of the fact that he had been selling stock and that he was receiving ten per cent. commission on all stock sold by him. The defendant Jones at that time advised petitioner that in the event he himself took stock in the corporation or came to its assistance financially, he would protect petitioner in the ten per cent. commission and see that he was paid. He also stated that if any one else was induced to become interested in the corporation by his influence or through him, he would see that petitioner was paid commissions upon the stock thus sold through him. Petitioner called John F. Weeks over the telephone and had him come to Midville for a conference with the said Jones. Weeks had a conference with the said Jones during the greater part of a day. Weeks then returned to Savannah, while petitioner continued to sell stock in the concern at other places.

Many conferences were had thereafter between Weeks, Jones, and petitioner, and it was finally represented to petitioner by the defendants Jones and Weeks that the corporation would have to be organized under the laws of the State of Delaware. Petitioner was then instructed to press sales of preferred stock as much as possible and to interest people in the undertaking business in the purchase of preferred stock, so that in this manner the trade of such undertakers might be bound to the proposed corporation. After some time had elapsed, the defendant Jones and the defendants John F. and J. Elmo Weeks finally decided to incorporate under the laws of the State of Delaware and sent out a circular letter to various customers of the defendants, the purpose of which was to obtain an extension of credit and to increase the good will of the concern and to get new customers. This letter is

attached to the petition and marked "Exhibit C." The defendants finally perfected the corporation, organizing it under the laws of the State of Delaware. Petitioner is advised and believes (but cannot state this upon his own knowledge) that John F. Weeks and J. Elmo Weeks and the defendant Jones have taken large amounts of stock in the corporation. Petitioner is advised and believes that by reason of his efforts the defendant Jones has furnished large quantities of lumber to the defendant corporation, and at one time, shortly after Jones became interested in the concern, he shipped the corporation two and one half million feet of lumber for the business of the concern. Petitioner is advised and believes that the defendants obtained from Jones as much as $40,000 worth of lumber at that time, but petitioner believes that the defendant Jones has furnished not less than $100,000 worth of lumber for the benefit of the concern. Petitioner is further advised and believes that the defendant Jones has invested in the concern not less than $750,000, and perhaps more. The corporation is capitalized at $1,000,000, and the defendants Weeks brothers and Jones have advised petitioner that $750,000 of the stock is not for sale.

Petitioner therefore charges that he has produced an investor who is ready, able, and willing to invest, and who has actually invested, in the corporation as much as three fourths of a million dollars; that all of the defendants had full knowledge of petitioner's rights and equities in the matter, and that the contract made between John F. Weeks and J. Elmo Weeks and petitioner has been ratified and adopted by the defendant Jones and by the defendant corporation, and that the defendant corporation has received the benefit of his efforts; by reason of which petitioner avers that he is entitled to receive ten per cent. from said corporation upon that stock which was sold prior to the time when Jones became interested in it, and in addition thereto ten per cent. on all money invested by Jones in the said corporation, whether in stock, lumber, or otherwise. Petitioner avers further that it is impossible to obtain from the defendants any accurate or comprehensive information as to the present condition of the corporation. He therefore prays that the defendants be required to bring into court their books of account, their stock-books, and all books of record, and to render to petitioner an accurate accounting

of their transactions and dealings with the stock subscribers whom petitioner had obtained, and particularly with the defendant Jones, and that the defendant Jones himself be required to produce his records of the dealings with the corporation and with the defendants Weeks brothers, in order that petitioner may be advised of his rights and may be placed in a position to enforce the same. Petitioner further avers that the defendants, both individually and as copartners, and the corporation, as a corporation, are indebted to him in the sum of $100,000 for services rendered as aforesaid.

The defendant corporation, South Atlantic Casket Company, demurred to the petition against it, upon the grounds: that the petition fails to set forth a cause of action; that the plaintiff is seeking to recover on an express contract and upon a quantum meruit in one and the same count; and that the petition fails to show how, when, and in what manner the alleged contract made between John F. Weeks and J. Elmo Weeks and the plaintiff was ratified and adopted by South Atlantic Casket Company, a corporation. A. W. Jones demurred to the petition, upon the grounds: that it set forth no cause of action against him; that it shows that any arrangement, contract, or agreement, express or implied, made by the plaintiff was made with John F. Weeks and J. Elmo Weeks as copartners; and that paragraph 23 of the petition fails to show any consideration that would require A. W. Jones to protect the plaintiff in any commissions therein mentioned. He demurred to paragraph 27 on the ground that it fails to show how, when, and in what manner he ratified and adopted the alleged contract made between John F. Weeks and J. Elmo Weeks and the plaintiff. He demurred upon the further ground that the plaintiff is seeking to recover on an express contract and on a quantum meruit in one and the same count. The demurrers of A. W. Jones and the corporation, South Atlantic Casket Company, were sustained, and as to them the petition was dismissed; and the main bill of exceptions assigns error upon this judgment.

In our opinion, there was no cause of action set out against either of these defendants. As to them the petition is vague, indefinite, and uncertain, and as a whole it states no facts that show legal obligation upon the part of the defendant corporation, and

A. W. Jones to pay the sum sued for or any part of such sum. The conclusion of the pleader that South Atlantic Casket Company and A. W. Jones are indebted to him in the sum of $100,000 is not sustained by the facts alleged in his petition. There are no such facts pleaded as would make A. W. Jones a partner of John F. and J. Elmo Weeks doing business as the South Atlantic Casket Company. There are no facts pleaded that would authorize the court to say that the corporation adopted the contract alleged to have been made by the plaintiff with John F. Weeks and J. Elmo Weeks. The facts pleaded in this case distinguish it from the cases of *Chicago Building Co.* v. *Talbotton Mfg. Co.,* 106 *Ga.* 84 (31 S. E. 809), and *Powell* v. *G., F. & A. Ry. Co.,* 121 *Ga.* 803 (49 S. E. 759). The petition alleges that the plaintiff was employed by John F. Weeks and J. Elmo Weeks and " was to secure financial aid and to sell stock in a proposed corporation. Plaintiff was not employed upon any written agreement, but it was understood that he was to sell stock, or otherwise get capital interested, and was to be paid a 10 per cent. commission." This allegation refers exclusively to John F. Weeks and J. Elmo Weeks. The alleged contract was made solely and entirely with Weeks brothers, a copartnership. There is no suggestion in it, nor in any allegation of the petition, that the corporation which was ultimately formed was to be liable to the plaintiff for his services.

John F. Weeks and J. Elmo Weeks, copartners doing business under the firm or trade name of the South Atlantic Casket Company at the time of the making of the alleged contract, and the corporation subsequently chartered and organized, are separate and distinct; and this is true even though the sole owners of the capital stock of the corporation may be none other than the members of the old partnership. The rights of the one and the other are different. The corporation is a creature of the law; it lives by authority of the law; it cannot have a voice in the making of the law by which it shall be governed; its conduct as a legal entity must conform, and its indulgences are limited, to the express terms of the charter. There is no rule more harmoniously fixed for the conduct of a corporation by all the courts than that it cannot lend its credit or become liable for the contracts or debts of another, unless express authority be granted by the terms of its charter. Even where by charter authority it may engage it-

self as responsible for the payment of the debts of another, it is necessary that there be a compliance with the same formalities which are required to make an individual liable for the debt of another. Generally, would not such an agreement have to be in writing? What about the necessity for a consideration? There was no consideration to the corporation for it to assume the debt or contract of John F. Weeks and J. Elmo Weeks, even if the corporation had charter authority to assume such contract or debts.

At the time the alleged contract declared on in this case was made, the defendant Allen W. Jones was certainly not a copartner of John F. Weeks and J. Elmo Weeks. There is nothing better settled than that an incoming partner is not liable for the obligations of the old firm, unless upon a consideration he agrees to be bound for the old firm's debts. In that event such an agreement must meet the requirement of the statute of frauds. Now what did the plaintiff do for Jones? If he did anything for any one in this case it was for John F. and J. Elmo Weeks. He may have induced Jones (for he in substance alleges that Jones told him he was a wonder) to become a creditor of John F. and J. Elmo Weeks, who he alleges at the time to have been a firm of bankrupts unable to meet their labor pay-rolls. Who said, "If you don't get us some money it will all be over?" Not Jones. Who was it that needed to promote a corporation to extricate themselves from the trap of poverty and utter financial ruin? It wasn't Jones. Under the allegation of the petition Jones was not a promoter of a corporation to save John F. Weeks and J. Elmo Weeks from financial destruction. They owed him nothing. Webster says a "promoter" is one who specifically "sets on foot, and takes the preliminary steps in, a scheme for the organization of a corporation, a joint stock company, or the like." Under the allegations of the petition Jones was not a promoter. This was an undertaking upon the part of John F. and J. Elmo Weeks to save themselves from bankruptcy. Even if, from the allegations of the petition here, the elastic imagination could tailor a garment that would fit Jones as a promoter, it would be worn as a shroud to completely protect him, for it is well settled that one promoter is not individually liable on a contract made by other promoters before he becomes interested in the enterprise.

Having reached the conclusion that it was not error to sustain the general demurrer of the corporation, the South Atlantic Casket Company, and Allen W. Jones, it becomes necessary to consider the question presented in the cross-bill of exceptions by John F. Weeks and J. Elmo Weeks, wherein error is assigned upon the judgment overruling the general and special demurrers filed by them. They attack the petition generally, upon the grounds that it sets forth no cause of action, and that it seeks to recover on an express contract and on a quantum meruit in one and the same count. We do not think the petition as a whole was subject to the general demurrer of the defendants Weeks. The allegations, taken as a whole, make a suit on an express contract. Of course, the plaintiff must recover, if at all, upon this express agreement and according to its terms. Whatever he may estimate his services to have been worth, and whatever he may estimate the number of shares of stock sold or capital interested for John F. Weeks and J. Elmo Weeks, he can recover, if at all, no more than is provided by the contract on which he declares. He has laid his case on the contract, and upon it he must stand in this suit. Paragraph 12 of the petition sets forth all the shares of stock he claims that he sold and the persons to whom sold. As was said in *Napier* v. *Strong,* 19 *Ga. App.* 401 (91 S. E. 579), " A plaintiff must recover upon the cause of action as laid in the petition." So in this case the plaintiff declares upon an alleged contract. This is the basis of his alleged right to recover. If he gets a judgment in his favor, the evidence must support the cause declared on, otherwise he would not have a legal judgment.

Now to the special demurrers of John F. and J. Elmo Weeks. The first special ground relates to the 6th paragraph of the petition. The 6th and 7th paragraphs, together, in connection with the case as a whole, are not subject to the special demurrer. The next special ground is that the 9th paragraph of the petition does not allege which one of the Weeks employed him. This ground is without merit. The petition alleges that they both employed him. Paragraph 10 is demurred to upon the ground that the allegation, " it was understood that he was to sell stock in the proposed corporation or otherwise to get capital interested therein, and was to receive ten per cent. of the par value of the stock which they sold or the capital which they interested in the concern,"

fails to show any definite, legally binding contract between plaintiff and defendants, and fails to show any consideration for the alleged promise. The petition as a whole renders this ground of demurrer without force. The plaintiff is not of necessity obliged to plead his whole case in one paragraph. If this paragraph be read alone, the ground of demurrer might be well taken. The other paragraphs of the petition must be read in connection with it. The objection raised to the 12th paragraph of the petition, upon the ground that it fails to allege to whom stock was sold, how sold, or when sold, or if issued, is without merit. There is attached to the petition, as an exhibit to this paragraph (" Exhibit B "), a list of the names of the persons to whom plaintiff claims he sold stock, the number of shares sold to each, and the par value. It is in this paragraph that he alleges that the persons named purchased this stock and that he sold it to them. He must, unless it be admitted by the defendants that he did as alleged, prove this allegation as laid. The demurrer to the 13th and 14th paragraphs of the petition, upon the ground that it is not alleged that the subscriptions were accepted by the defendants, etc., is without merit, since the plaintiff alleges that he sold the shares of stock, and sold them to the persons named in a preceding paragraph of the petition. The demurrers to paragraphs 19, 26, 27, and 28 are not sufficient to require the striking of these paragraphs upon the grounds urged. These paragraphs may be said to be illustrative of what the plaintiff claims he did while working under the contract. Whatever service he claims to have rendered, he must of necessity stand on his alleged contract. By reading the other paragraphs of his petition in connection with paragraph 12, it will be noticed that he does not claim to have sold Allen W. Jones any stock. The court will construe the contract declared upon. While the petition as to John F. Weeks and J. Elmo Weeks could have been drawn at less length and just a bit more specifically, as to them it was not subject to the grounds of special demurrer urged. The plaintiff may think his services to John F. Weeks and J. Elmo Weeks are worth $100,000; they may not agree with him; suffice it to say, whatever the opinion of each may be, if the plaintiff recovers at all, he must recover on the contract declared upon, and his proof must be made with the positiveness and definiteness required by the law. The alleged contract is not

an illegal one. It was not error to overrule the special demurrers of the defendants John F. and J. Elmo Weeks.

*Judgment affirmed on both bills of exceptions. Broyles, C. J., and Bloodworth, J., concur.*