*John B. Morris,* for plaintiff.
*J. H. & Emmett Skelton, Carey Skelton,* for defendant.

## 26426. FIDELITY AND DEPOSIT COMPANY OF MARYLAND *et al.* v. FINE.

DECIDED NOVEMBER 23, 1937.

*Paul H. Butler, Durwood T. Pye,* for plaintiffs in error.

*Welborn B. Cody, Joseph J. Fine, Harold Hirsch, Marion Smith,* contra.

BROYLES, C. J.  The record in this case is voluminous and complicated, and the various assignments of error are, at least in part, interwoven and duplicitous, and can best be elucidated and solved by a partial statement of the pleadings and the evidence.  Sam Fine brought suit against East Side Lumber and Coal Company and Fidelity and Deposit Company of Maryland.  The petition as amended alleged in substance, that on or about September 8, 1934, the petitioner was the owner of certain described real estate in the City of College Park, with a building located thereon in which petitioner operates a retail store; that on said date defendant lumber company entered into an agreement with the City of College Park whereby West Main Street of the city would be widened, and in so doing the building of the plaintiff (as well as the buildings of others) would be set back, altered, and remodeled; that profert is made of said contract, and same will be produced at the trial; that on the same date the defendants signed an agreement in the nature of a bond, which is attached to and made a part of the petition; that immediately after the East Side Lumber and Coal Company discontinued the work under said contract, petitioner complained to it concerning the irregular and faulty manner in which said work had been done, and on two occasions, within thirty days after said defendant discontinued the work, petitioner demanded that the faulty condition be corrected, but defendant failed and refused to remedy the same; that said faulty condition consisted of improper flashing and improper joining of roof on the parapet wall, including the improper replacement of hood over the awning; that by reason of the improper flashing and failure to join the roof on the parapet wall, the inside of petitioner's building and his merchandise therein were subjected to the elements, and in order to correct this situation the petitioner employed Gates Brothers, general contractors, to repair said building at an expense of $151.84, as shown by an exhibit attached to the petition; that defendant never did complete the contract in accordance with the terms thereof, and the same was not completed on February 24,

1936, when petitioner, in order to prevent further damage, employed Gates Brothers to finish said work and to repair said building in accordance with the manner that defendant was obligated to do it, an itemized statement of what work Gates Brothers did, and the cost of material and labor, being attached to the petition as an exhibit; that in addition to the above charge, petitioner was damaged in the sum of $75 by reason of the faulty workmanship of the defendant East Side Lumber and Coal Company, which caused a seepage of water in petitioner's building, which will require repairs to the extent of $75; that, in addition to the above items of damage, the water seepage in said building damaged petitioner's merchandise to the extent of $176, as shown by an exhibit attached to the petition, which shows the cost price of the goods and the reduced price at which they were sold on account of being damaged; that the cost price shown was the fair market value of the merchandise; that all of said loss was caused by the faulty and irregular workmanship of the East Side Lumber and Coal Company; and that, by reason of the contract hereinbefore referred to, both of said defendants are indebted to petitioner in the sum of $361.84.

The bond attached to and made a part of the petition provides, in part, that the East Side Lumber and Coal Company as principal, and the Fidelity and Deposit Company of Maryland as surety, are bound unto the mayor and council of the City of College Park as obligee; the condition of the obligation being that "said principal has entered into a contract with said mayor and council of the City of College Park . . for the setting back, altering, and remodeling of certain buildings on West Main Street in said City of College Park, in accordance with certain drawings, specifications, and amendments thereto, referred to in said contract, and also in accordance with the provisions, terms, and conditions of said contract, which said contract is dated the 8th day of September, 1934, and is hereby referred to and made a part hereof;" that the principal would do the work according to the contract and save the obligee from all costs and charges on account of the doing of said work; and that "for a violation of said contract recovery may be had hereon either by obligee or by any property owner whose property is to be set back, altered, and remodeled under said contract." Each defendant demurred to the petition

as amended. In their answers they denied the material allegations of the petition, and averred that any damage to the plaintiff's building and merchandise was due to his negligence in allowing snow to accumulate on the roof of the building; that the leaks were due to an act of God; and that all work done on said premises by the defendant was completed more than a year before the plaintiff's cause of action arose, and that the defendant never guaranteed any work for more than twelve months. Each defendant filed a plea of the statute of limitations, and prayed that the case be dismissed. Each also filed "objections to plaintiff's amendment" of the petition. All of the demurrers and objections to the pleadings were overruled, and exceptions pendente lite were filed. The jury found for the plaintiff $178.24, and the court refused to grant a new trial. The bill of exceptions assigns error on all of the rulings of the court. There were 35 grounds of demurrer, and the motion for new trial contained 14 grounds covering 40 pages of typewritten matter. Many of the objections raised by the pleadings are duplications of objections in another form; and we will discuss only the controlling issues.

The plaintiff testified that he was the owner of the building; that after the defendant contractor finished working on the building it began to rain hard, and the whole roof all the way round leaked everywhere, and damaged the hats, shoes, and everything in the store; that he called the contractor but could not make him come, but that finally the contractor told a roofer by the name of Poss to come and fix it; that "in about a week or ten days it came another rain, and it flooded me so I couldn't keep nothing in the windows; the ceiling was coming down, the woodwork in the windows got wet, and there was 2-1/2 inches of water in the windows;" that he again called the contractor, who this time sent three negroes to fix the roof, and they too failed to fix it; that he called again, and "Mr. Robinson [president & treasurer of the East Side Lumber and Coal Company] told me to go ahead and hire men whom I knew would fix it;" that plaintiff then hired Gates Brothers, who properly repaired the building, and plaintiff paid Gates $151.84; that he suffered damage to his store and merchandise in the summer and fall of 1935, and the first of the year in 1936; that before the time he had the roof fixed, men's goods, ladies' goods, and shoes would get wet in the windows, and he would

have to take them out, put them on tables, and sell them for whatever he could get for them; that in keeping a record of these losses he "put down the losses from the cost, and not from the profit;" and that when the contractor finished working on the building, the job "was not completed" in accordance with the terms of the contract. Gates testified that he repaired the roof for the plaintiff, that he found certain described faulty and defective work, and that "there was part of the flashing left off," and "rain came over behind the roofing and went down the house. When the rain did get behind the flashing, or ice would melt, it would come into the building right over the show windows in front. . . If the roof had been properly fixed I don't think the weather would have had anything to do with the leak." A. R. Hardegree testified that enough water came into the plaintiff's building to cause puddles. Dr. J. B. Smith testified that "after Mr. Fine's building was remodeled there were leaks in the roof. . . I saw his window full of water and his merchandise ruined on every occasion when we had a rain." R. L. Brand testified that after the remodeling by the defendant, the roof leaked every time it rained, and water ran in the window. The contract was introduced in evidence, and showed that it was between the mayor and council of the City of College Park and the East Side Lumber and Coal Company. It described the various buildings to be altered or remodeled on West Main Street in College Park, and the scope of the work to be done, showed that the plaintiff was the owner of the building which is the subject of this litigation, that the work was to be completed according to the contract, that "the acceptance of the work and the making of final payment by the city shall in nowise affect the guarantee of the work for the period of one year," and that "all work is to be guaranteed for a period of one year from the completion of the buildings. Any imperfections resulting from faulty workmanship and material which may develop during said period are to be made good without cost to the city, and/or to the respective property owners and tenants." Also introduced in evidence was an instrument executed by the East Side Lumber and Coal Company, acknowledging receipt of final payment by the City of College Park for the work, and reciting that "said payment does not in any sense or to any degree constitute a waiver or release of liability of or in relationship to any claims or demands

which the city and/or any of the property owners, tenants, or sub-tenants, may have under said contract and/or the satisfactory performance bond executed by East Side Lumber and Coal Company and Fidelity and Deposit Company of Maryland under date of September 8, 1934, in connection with said contract, either under the one-year guarantee clause therein set forth, or otherwise."

For the purposes of this decision it is unnecessary to quote from the evidence of the defendants. The jury determined the issues of fact; and the foregoing statement as to the pleadings and the evidence shows that the verdict was authorized. It also answers most of the questions raised by the assignments of error. The defendants, in their plea of the statute of limitations, alleged that the cause of action arose more than one year before the filing of the petition and therefore was barred by the statute. The contract provided that any imperfections which developed within the year should be made good by the defendant without cost to the city or the property owner; and under this clause, if the defect developed within twelve months after the defendant discontinued work on the building, the defendant was obligated to make it good. The evidence showed that the defendant was still working on the building within less than twelve months before suit was filed. Moreover, completing the work as referred to in the contract means completing the work in accordance with the terms of the contract. The petition alleges that "within thirty days after defendant discontinued said work petitioner demanded that the faulty condition be corrected," and "that the defendant never did complete the contract in accordance with the terms thereof, and the same was not completed on February 24, 1936," and that "petitioner employed Gates Brothers to finish said work." The statement as to what work Gates Brothers did, which is a part of the petition, shows that the defendant never completed the work. Moreover, the instrument signed by the defendant, stating that payment for the work did not in any sense or to any degree constitute a waiver or release of liability "under the one-year guarantee clause or otherwise," shows that the defendant recognized its liability for any defect that developed within a year. The evidence shows that the city settled with the defendant for the work on March 5, 1935; and that during the summer and fall of 1935, and the first of 1936, the plaintiff's building was leaking, and the defendant had

notice thereof. That the defendant recognized that the work was not completed according to the terms of the contract is also shown by the fact that it worked on the building during the summer and fall of 1935, and, after failing to fix the roof properly, told the plaintiff to go ahead and hire some men who he knew could fix it, and the plaintiff hired Gates Brothers in February, 1936. The suit was filed on June 4, 1936, and was not barred by the statute of limitations.

The defendant assigns error on the allowance of the plaintiff's amendment, averring that the original petition declared upon a contract between Sam Fine, the plaintiff, and the City of College Park, and the amendment declared upon a contract between the defendant and the City of College Park; and that the petition sought damages on the theory that the defendant was guilty of faulty workmanship in connection with the completion of the contract, while the amendment sought damages on the theory that the contract had never been completed. The original petition alleged "that on or about September 8, 1934, petitioner entered into an agreement with the City of College Park," etc. By amendment the word "petitioner" was changed to "defendant." This does not change the cause of action because the original petition, construing it as a whole, shows that the contract was between the East Side Lumber and Coal Company and the City of College Park. The bond attached to and made a part of the petition shows that the East Side Lumber and Coal Company as principal, and the Fidelity and Deposit Company of Maryland as surety, guarantee the faithful performance of the contract between the East Side Lumber and Coal Company and the mayor and council of the City of College Park; and the contract is referred to and made a part of the bond. Moreover, the first paragraph and first line of the petition names the East Side Lumber and Coal Company as defendant. It is evident from the petition that it was the defendant, and not the petitioner, that contracted with the city to do this work; and making the correction complained of did not change the cause of action. Nor did the allegation in the amendment that the work was incomplete change the cause of action. The statement rendered by Gates Brothers, which is a part of the original petition, shows that the defendant had not completed the work; and Gates Brothers, employed by the plaintiff at the suggestion of the de-

fendant, did complete the work. The distinction between work being faulty and defective, and work being not completed according to the provisions of the contract, is not sufficient to constitute a change in the cause of action. While the original petition was defective, it was not so defective as not to be amendable, and the amendment in this case cured the defects and did not change the cause of action. The law is liberal in the allowance of amendments; and for no reason assigned did the court err in allowing the amendment to the petition. The demurrers to the petition were cured by amendment, and the order overruling the demurrers was not passed until March 3, 1937, after the amendment was allowed on December 4, 1936. The special demurrer to paragraph 4 of the petition, on the ground that the agreement with the City of College Park was not set out in the paragraph or in the petition, was without merit in view of the allegation in the petition that "profert is here made of said contract, and same will be produced at the trial of said case or any other hearing in connection therewith. Petitioner alleges that the reason copy of said contract is not hereto set out is that the original thereof is in the possession of the officials of College Park, Ga." See *Chicago Building &c. Co.* v. *Talbotton &c. Co.*, 106 *Ga.* 84 (31 S. E. 809). The demurrers to the petition as amended, which are not abandoned, are referred to elsewhere in this opinion, and are without merit.

The motion for new trial alleges that the court erred in permitting the plaintiff to testify that he was the owner of the property in question, the objection being that a deed would be the highest and best evidence. The title to this property was an incident in the litigation, and not the object of the litigation. The contract which the defendant signed, and under which the defendant did the work, named the plaintiff as owner of the property. "If in making a contract the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud, accident or mistake." 21 C. J. 1111, § 111. "If, in making a contract or in a course of dealing, the title of one party or the other to the property involved in the transaction is recognized, and the dealing proceeds upon that basis, both parties are ordinarily estopped to deny that title or to assert anything in derogation of it." 21 C. J. 1238, § 244. The entire

record of the contract and all the dealings between the parties show that the plaintiff's ownership of the property was recognized, and was undisputed up to the time of this objection. Indeed, it might be presumed that the plaintiff would not have had the building repaired if he did not own it, and would have had no occasion to institute this suit. Under all the circumstances the court did not err in permitting the plaintiff to testify that he owned the property.

A large portion of the motion for new trial is devoted to the contention that the work was completed more than a year before the suit was filed. We have heretofore discussed this in our consideration of the plea of the statute of limitations; but, so far as it relates to the grounds of the motion for new trial, special attention is called to the following: The petition as amended avers that the work was incomplete, in that it alleges a "failure to join the roof on the parapet wall," and that "the defendant never did complete the contract in accordance with the terms thereof, and the same was not completed on February 24, 1936," and that petitioner, to prevent further damage, "employed Gates Brothers to finish said work." The evidence of C. W. Gates shows that "part of the flashing was left off" by the defendant. The evidence of the plaintiff showed that the defendant "told me to go ahead and hire men whom I knew would fix it," which the plaintiff did in February, 1936, approximately four months before the suit was filed in June, 1936. The evidence shows that the incomplete and defective work of the defendant which the plaintiff had corrected, developed "about June, 1935," less than a year from the time the defendant discontinued work, and that the plaintiff notified the defendant of the defects; and the contract of the defendant specifically provided that "any imperfections resulting from faulty workmanship which may develop during said period are to be made good without cost to the city or to the representative property owners and tenants." The evidence further shows that the final payment to the defendant for the work was made on the condition and with the written agreement of the defendant that it in no sense or in any degree relieved the defendant from liability under the guarantee in the contract or otherwise. Neither the complaint in reference to the charge of the court, nor any other ground of

the motion for new trial shows cause for a reversal of the judgment. The court did not err in overruling the motion.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*