18580.   CANN, administrator, *et al. v.* MACON ACADEMY
MUSIC COMPANY.

DECIDED MARCH 7, 1928.

*Harris, Harris & Popper, Anderson, Cann & Cann, Dorsey, Howell & Heyman, Troutman & Troutman,* for plaintiffs in error.
*Slaton & Hopkins,* contra.

LUKE, J.   Macon Academy Music Company brought its action in two counts against C. B. Howard, as executor of the estate of G. T. Howard, and Brown Wimberly; but, by agreement of counsel, which was made an order of court, Ferris Cann, administrator with the will annexed, was substituted as a party defendant in lieu of C. B. Howard, who had resigned his executorship.

The first count of the petition seeks damages for breach of a certain lease contract, and the second seeks the recovery of unpaid rent.   After the answer had been amended several times to meet demurrers, the court struck it and directed a verdict for the plaintiff.   Upon proper exceptions the case is here for consideration.

Omitting the formal allegations, the first count of the petition is substantially as follows:   3.   Defendants have injured and damaged the plaintiff in the sum of $19,650 by the breach of a certain contract.   4.   On July 18, 1918, G. T. Howard and Brown Wimberly leased from petitioner certain property in Macon, Ga., for a term of five years, to wit, from September 1, 1920, to August 31, 1925, at an agreed annual rental of $10,400, payable in monthly

installments of $866.66, as appears from copy lease attached. 5. Defendants paid said rent according to contract through February, 1922, but nothing after that time. 6. Being permitted so to do under the terms of said lease contract, and to minimize its damages as required by law, the petitioner rented said premises to another tenant for a term of two years, to wit, up to and including February 29, 1924, at an annual rental of $5000, payable in monthly installments of $416.66 each. 7. Thereafter, for the purpose of minimizing its damages, the petitioner rented said premises to another from March 1, 1924, at an annual rental of $4500 for the first two years, payable in monthly installments of $375. 8. The failure and refusal of defendants to pay rent after February, 1922, was a breach of said lease contract. 9. "The amounts for which the premises were thereafter rented under the two contracts above described, for the purpose of minimizing plaintiff's damages, and for the account of the original tenants, were the best rent which petitioner was able to obtain for the premises, after diligent effort to rent same to the best advantage." 11. Defendants have refused to pay said amount, or any part thereof, on demand.

Except that count 2 is for the recovery of unpaid rent instead of for breach of contract, it is the same as count 1. The lease contract referred to in paragraph 4 of each count of the petition contains the following provisions: "Lessor, at its option, upon a breach of any of the terms and conditions of this contract, may sublet the premises leased hereby, or any part thereof, at the best price that it can obtain by reasonable effort under private negotiations, and charge the balance, if any, between said price of subletting and the contract price, to the lessees and hold the lessees therefor. Said subletting by the lessor will not in any manner or in any sense be a breach of the contract on the part of the lessor, but will be an act in behalf of the lessees, merely as agent for said lessees in order to minimize the loss, if any. All rights of the lessor herein contained are both optional and cumulative, and not restrictive of any other rights under the law." "This contract shall be considered as a lease and not as an estate for years. But this lease may be assigned or the premises sublet by the lessees to parties acceptable to the lessor only when permitted in writing by said lessor." The contract further provides, that if lessees fail to comply with any of its terms, and continue so to do for ten days after notice of such failure is

given them by the lessor, the lease, at the option of the lessor, shall terminate; and that notice by mail addressed to lessees care of Grand Opera House, Macon, Ga., or to their last-known residence, shall suffice; "provided further that it shall not be necessary to give any written notice whatever to lessees or assigns of any default as to payment of rent." The contract contains also this clause: "It is hereby agreed that notwithstanding any assignment which may be permitted of this lease, that nevertheless the parties of the second part continue to remain bound for all the obligations of this contract."

Answering the petition, the defendants (2) deny paragraph 3 of the petition, i. e., injury by breach of contract; (3) admit paragraph 4, i. e., the lease as alleged; (4) deny paragraph 5, and admit rent was paid under contract through February, 1922, but say the same was not paid directly by the defendants after October 1, 1920, but was paid by Capital Theatre Company directly to the plaintiff, which accepted Capital Theatre Company as its tenant in the place and stead of defendants, "and Capital Theatre Company assumed and agreed to carry out the rent of Grand Theatre to the expiration of the lease;" (5) answering paragraph 6 they deny that the plaintiff rerented the premises to minimize damages as alleged, but say that Capital Theatre Company assumed the defendants' lease, and the plaintiff accepted Capital Theatre Company as its tenant, and afterwards reduced the rent without any agreement with defendants; (6) answering paragraph 7, they deny renting of premises by the plaintiff to another tenant as alleged, but say Capital Theatre Company assumed the defendants' lease, and the plaintiff accepted that company as its tenant, and afterwards reduced the rent to Capital Theatre Company, without any agreement with the defendants; (7) answering paragraph 8, they deny that defendants refused to pay rent according to lease after February, 1922, and deny any breach of said contract, but say defendants entered into a contract with Capital Theatre Company whereby Capital Theatre Company rented the Grand Opera House, and agreed and assumed to carry out all the obligations of said contract with plaintiff, and, with consent of plaintiff, went into possession of the premises, and plaintiff accepted Capital Theatre Company as its tenant in the stead of the defendants; (8) they deny the amounts realized by the plaintiff from rerenting were to minimize damages, or for the ac-

count of the defendants, "deny that this was the best rent which petitioner was able to obtain from the premises after diligent effort to rent same to the best advantage," aver that the defendants had already subrented said premises to Capital Theatre Company for the full term of the original lease, and that the plaintiff had accepted Capital Theatre Company as its tenant and by its conduct waived the provision of the original lease requiring written permission for lessees to sublet the premises, and, afterwards, without the defendants' permission, and for its own purpose, accepted a reduced rental from Capital Theatre Company; (9) they deny breach of contract and all indebtedness; (10) they admit refusal to pay.

Further answering, the defendants pleaded substantially as follows: (11) Defendants entered into said contract of lease with the plaintiff and fully performed their obligations thereunder. On September 14, 1920, Capital Theatre Company rented the premises from the defendants for the same rental, the same time, and upon the same terms as were agreed upon by the plaintiff and the defendants in said original lease contract. Capital Theatre Company went into possession of the premises with the full knowledge and consent of plaintiff. The first month Capital Theatre Company paid the rent to defendants, and they turned it over to plaintiff, but afterwards Capital Theatre Company paid the rent directly to plaintiff, which recognized said company as its tenant. No objection to renting of premises to Capital Theatre Company by defendants was ever made by plaintiff, and it made no further demand upon defendants to comply with the original contract. After plaintiff accepted Capital Theatre Company as its tenant in the place of defendants, all negotiations regarding the premises were carried on by it directly with Capital Theatre Company. When the latter failed to pay rent in 1922, no notice of default was given defendants, nor was any demand made upon them for rent. Plaintiff entered into a complete settlement with Capital Theatre Company for all back rentals, and undertook to release it from its obligations to defendants under its lease with them, and executed a new lease on November 9, 1922, which provided that reduced rental should be effective as of March 1, 1922. This new lease was performed by Capital Theatre Company, and, at its expiration, renewed. (12) When plaintiff entered into said new lease it knew Capital Theatre Company had agreed to pay plaintiff the full amount due it under the original lease con-

tract, and to carry out all the terms thereof. Nevertheless, plaintiff did not call upon defendants for rent, did not notify them that rent had not been paid, contracted directly with Capital Theatre Company for a lower rental, and accepted said lower rental. Wherefore plaintiff is estopped by its conduct from saying that it could release Capital Theatre Company from paying the full amount of rent it assumed to pay for defendants, and at the same time asserting that defendants should pay the difference between the rent originally contracted to be paid and the amount paid by Capital Theatre Company.

On August 20, 1925, the plaintiff demurred generally and specially to the plea and answer, and an order was taken requiring the defendants to show cause on September 12, 1925, why the "demurrers should not be sustained and the motion to strike granted." On November 12, 1925, the defendants amended the plea and answer, and the amendment was allowed, "subject to objection and demurrer." On June 6, 1926, the plaintiff renewed its demurrers to the plea and answer as amended. On June 2, 1926, the defendants filed an amendment to their plea and answer, "subject to objection and demurrer." On June 13, 1927, the demurrer was renewed to the plea and answer as amended. On July 29, 1927, the court sustained the demurrer and struck the plea and answer, and defendants excepted pendente lite. On August 4, 1927, and during the same term of court, and over objection of plaintiff the court modified its order of July 29, 1927, by allowing defendants ten days from August 4, 1927, to amend their plea and answer. On August 8, 1927, defendants filed an amendment, "subject to objection and demurrer." On September 3, 1927, plaintiff renewed its demurrers, and filed additional demurrers to said plea and answer as finally amended. On the same day the court "ordered and adjudged that the answer be stricken as constituting an insufficient defense in the cause," and the defendants excepted pendente lite.

As a part of the amendment of June 2, 1926, to the plea and answer, a copy of the lease of September 14, 1920, from the defendants to Capital Theatre Company was set out; also a copy of a letter from Capital Theatre Company to plaintiffs in error, dated December 1, 1921, and reading as follows: "It is understood and agreed that the Capital Theatre Company will assume and carry out the rent of the Grand Theatre to the expiration of the present

lease which is now drawn and existing between Troup Howard and Brown Wimberly and the Grand Theatre owners." It was not until August 8, 1927, that a copy of the lease of November 9, 1922, made by Macon Academy Music Company to Capital Theatre Company was set out in the answer, or that the substance of the subsequent lease between the same parties was given in the answer.

At this stage of the case we deem it proper to advert to the following contention of the defendant in error: The order of July 29, 1927, striking the answer, "as not containing a sufficient defense to the cause," controlled the case. After that order was amended to give additional time for amending the answer, an amendment was made which did not materially change the original defense, and therefore neither cured the defects of the said defense nor opened the answer to further demurrer. In this connection it is pointed out that the court stated in the order of July 29, 1927, that there was read in the presence of the court by counsel for the parties, and as part of the pleadings in the case, the sublease contract of November 9, 1922, from Macon Academy Music Company to Capital Theatre Company, referred to in the statement of indebtedness attached to the petition and also in the answer. However, up to this time the contents of the sublease had not appeared in the pleading.

In support of the contention that the said sublease was a matter for the court's consideration in reaching the conclusion evidenced by the order of July 29, 1927, striking the answer, the case of *Chicago Building &c. Co.* v. *Talbotton Creamery &c. Co.,* 106 *Ga.* 84 (31 S. E. 809), is relied on. The gist of that decision is stated in headnote 1 as follows: "If upon the hearing of a demurrer to a petition the plaintiff make profert of a written contract which is the foundation of the suit, and produce and read the same, it thereby becomes a part of the petition and may be considered on the demurrer, notwithstanding it is not set forth in the petition or exhibited thereto. The better practice, however, is to set forth the instrument in the petition or attach it thereto as an exhibit." The key to the foregoing decision appears to be that the written contract in question was the "foundation of the suit." The strictness with which the courts of this State adhere to the rule that the pleadings alone are to be considered on demurrer is evidenced by numerous decisions, including the following: *Candler* v. *Kirkland,* 112

*Ga.* 459 (37 S. E. 715) ; *Mitchell* v. *So. Ry. Co.,* 118 *Ga.* 845 (45 S. E. 703) ; *Hicks* v. *Beacham,* 131 *Ga.* 93 (62 S. E. 45) ; *Mann* v. *Showalter,* 145 *Ga.* 268 (4) (88 S. E. 968). The last case cited (p. 275) limits the case cited in 106 *Ga.* in the following language: "The ruling in *Chicago Bldg. &c. Co.* v. *Talbotton Creamery &c. Co.,* 106 *Ga.* 84 (31 S. E. 809), decided by four Justices, where upon the hearing of a demurrer to a petition, profert was made of a written contract which was the foundation of the suit, and it was produced and read, will not be so extended as to make a part of the record every paper in another case which is mentioned or partly described, so that it can be considered on demurrer to the petition, or brought to this court by specification as a part of the record."

In the light of the foregoing, we do not think that the subcontract of November 9, 1922, could properly have been considered by the court in making its order of July 29, 1927. We are also of the opinion that the amendment filed to the answer on July 8, 1927, to which was attached a complete copy of the sublease of November 9, 1922, and which contained the substance of the subsequent sublease of March 1, 1924, was material and reopened to demurrer the plea and answer. Wherefore the correctness of the order of September 3, 1927, striking the answer as finally amended, "as constituting an insufficient defense," is properly before this court for consideration.

To summarize: the following writings are for our consideration: (1) Original lease from Macon Academy Music Company to G. T. Howard and Brown Wimberly. (2) Lease from Howard and Wimberly to Capital Theatre Company. (3) Letter of December 1, 1921. (4) Subcontract of November 9, 1922, Macon Academy Music Company to Capital Theatre Company. (5) Subcontract dated March 1, 1924, from Macon Academy Music Company to Capital Theatre Company.

The original lease has been referred to in paragraph 4 of the petition, and certain parts of it have already been quoted. The lease from Howard and Wimberly to Capital Theatre Company, dated September 14, 1920, and made without the written consent of owners as provided in the original lease, ran for the same time, was for the same sum, and was payable as the original lease. It, however, provided that Howard and Wimberly should be paid at the end of the year a part of the net profits derived from the operation of

Grand Theatre. The said lease contains the following provisions: "It is hereby understood and agreed that this lease is made and accepted subject to all the terms, covenants, and stipulations and agreements contained in the aforesaid lease from the Macon Academy Music Company to G. T. Howard and Brown Wimberly . . . ; and the lessee does hereby assume and agree to perform all of the covenants and obligations imposed upon the lessees in said lease, *with the exception of the payment of the rent to the Macon Academy Music Company.*" (Italics ours.) "The lessors herein agree to well and truly pay the rent to the Macon Academy Music Company specified in said lease to them as aforesaid, at the times and in the amounts and manner specified, and that they will commit no act detrimental to the lessee's enjoyment of said premises, and which might cause a forfeiture of such superior lease on the premises aforesaid; and will promptly forward to the lessee herein all notices and writings affecting said tenancy received by them from the superior lessors aforesaid."

The lease of November 9, 1922, from Macon Academy Music Company to Capital Theatre Company, beginning March 1, 1922, and ending at midnight on February 29, 1924, and stipulating for an annual rental of only $5000, contained the following provision: "It is understood and agreed between the lessor and the lessee that the premises herein leased are being rented to said lessee for the account of G. T. Howard and Brown Wimberly, lessees, and that the landlord can look to said Howard and Wimberly for any deficiency between the rental under this contract and the rent under the contract now existing between the landlord and said Howard and Wimberly; it being specifically agreed that the landlord does not by this contract waive any right at law and equity against said Howard and Wimberly." The second contract between Macon Academy Music Company and Capital Theatre Company was the same as the first, except that it was for an annual rental of $4500 and commenced March 1, 1924, and ended February 28, 1929.

The original answer has already been set out somewhat fully, because it contains the germ of the defense. We shall now state very briefly the gist of the numerous amendments (the original lessor and the original lessees being designated for convenience as they were in the pleadings in the lower court, to wit, as plaintiff and defendants, respectively): Under the lease of September 14, 1920,

from the defendants to Capital Theatre Company, the latter company went into possession of the premises without objection on the part of the plaintiff, paid rents directly to the plaintiff after the first month, and was receipted for them by the plaintiff. The letter of December 1, 1921 (hereinbefore quoted), confirmed said lease. Plaintiff entered into subcontract of November 9, 1922, with Capital Theatre Company with full knowledge that the latter was the tenant of the defendants and had agreed to pay the full rent due by the defendants to plaintiff. Plaintiff knew that Capital Theatre Company had paid no rent to any one since February 1, 1922. Neither of the defendants had any notice of the making of said lease. Neither of the defendants knew of said lease, or of its terms, until long after it was made; nor did either of them know of its terms until after suit was filed. At the time the plaintiff executed its first lease to Capital Theatre Company it had the legal right to make it pay all rents; and in making the sublease of November 9, 1922, it compromised all claims for back rents, except as provided in said lease. Under said subcontract $5000 annually was paid, instead of the $10,400 contracted to be paid by defendants under the original contract. By reason of its having received rents directly from Capital Theatre Company and of its having receipted the company directly for the same from October 1, 1920, to March 1, 1922, plaintiff is estopped from asserting that defendants owe it the difference between the amount due under the original contract and the amounts collected from Capital Theatre Company.

It is insisted that the pleadings show, (1) a substitution of tenants; (2) an estoppel of Macon Academy Music Company to claim the sum sued for; and (3) raise the question whether the plaintiff exercised its option under the original contract to relet the premises for the account of Howard and Wimberly, or its option to repossess the premises on default of Howard and Wimberly; and it is insisted (4) that the plea and answer raised an issue of fact as to whether said premises were sublet by the plaintiff at the best price obtainable by it.

It would answer no good purpose to set out seriatim each allegation of the plea and answer as amended, and undertake to show by citation of authority that it was not sufficient to make a substitution of tenants or work an estoppel. We shall content ourselves

with mentioning some of the general rules applicable to cases like this, and with stating our conclusion.

It is only at the election of the owner that a subtenant becomes his tenant. *Roberson* v. *Simons,* 109 *Ga.* 360 (34 S. E. 604). But the owner is not compelled to make the subtenant his tenant. "He may treat the person with whom he dealt as his tenant, and nothing done by such person can relieve him from any of the liabilities to the landlord which the relation imposes." *Fletcher* v. *Fletcher,* 123 *Ga.* 470 (51 S. E. 418). "1. A landlord does not waive his right of action against his tenant merely by allowing a subtenant or assignee of the original tenant to remain in possession of the premises, even though he accept payment of the rents from the subtenant or assignee, with knowledge of such subletting or assignment. The original tenant may be released from liability by an agreement with the landlord for the substitution, or by the landlord's electing to proceed against the subtenant as his own tenant." *Cuesta* v. *Goldsmith,* 1 *Ga. App.* 48 (57 S. E. 983). In the same decision (p. 51) it is said: "Where the lease contains an express agreement or covenant by the lessee to pay rent, he remains liable for rent to accrue, though he assigns his lease. And this liability of the lessee is not affected by the fact that the landlord accepts payment of the rent from the assignee, nor by the fact that the landlord assents to the assignment." See also *Americus Mfg. & Improvement Co.* v. *Hightower,* 3 *Ga. App.* 65 (59 S. E. 309) ; *Hooks* v. *Bailey,* 5 *Ga. App.* 211 (62 S. E. 1054) ; *Schachter* v. *Tuggle Co.,* 8 *Ga. App.* 561 (70 S. E. 93). In the case of *Baldwin* v. *Lampkin,* 14 *Ga. App.* 831 (82 S. E. 369), where an exception was taken to the charge of the court upon the right of the owner to relet the premises, this court said: "As already stated, there was testimony which authorized the jury to conclude that the defendant assented to a special agency conferring upon his landlord the right to relet the premises to the best advantage, without any restrictions whatever upon this power; and if this was true, it was not necessary for the landlord to have obtained the consent or approval of the tenant who had vacated the premises under such circumstances; and, therefore, it was not error for the court to charge the jury that if the testimony in behalf of the plaintiff was true, he had the right to relet the premises without the knowledge, consent, or approval of the defendant." In this connection, note the very explicit provision in

the original lease contract that the owner might, upon default in the payment of rent, sublet the premises as agent for the lessees, and still hold Howard and Wimberly liable for the unpaid rent.

In order to avoid repetition, we will simply say that a reference to the provisions hereinbefore quoted from the contract between Howard and Wimberly and Capital Theatre Company discloses that it was not the intention of the parties at the time the contract was made that there should be any substitution of tenants. The same is said of the contract of November 9, 1922, and in this connection special reference is made to the clause heretofore quoted therefrom wherein Macon Academy Music Company leased the premises to Capital Theatre Company and agreed that the premises were rented "for the account of G. T. Howard and Brown Wimberly," etc. The letter of December 1, 1921, wherein Capital Theatre Company advised Howard and Wimberly that it agreed to "assume and carry out the rent of the Grand Theatre," does not change the stipulations of the solemn written contract between the same parties; nor is Macon Academy Music Company bound by that letter. The original lease contract provided for subletting without any limitation as to tenants. In short, as to this feature of the case it is our opinion that Macon Academy Music Company kept strictly within the terms of the original lease contract, and studiously avoided entering into any contract or committing any act that would either effect a substitution of tenants or estop it from proceeding against Howard and Wimberly for unpaid rent.

We think it clearly appears from the record that Macon Academy Music Company exercised its option to relet the premises for the account of Howard and Wimberly, and not its right to repossess them. The original lease contained this sentence: "Lessor, at its option, upon breach of any of the terms and conditions of this contract, may sublet the premises leased hereby, or any part thereof, *at the best price that it can obtain by reasonable effort under private negotiations, and charge the balance, if any, between the price of subletting and the contract price to the lessees and hold the lessees therefor.* Reference to paragraph 9 of both counts of the petition shows this allegation: "The amounts for which the premises were thereafter rented . . were the best rent which petitioner was able to obtain for the premises, after diligent effort to rent same to the best advantage." A portion of paragraph 8 of each answer con-

tains the following: "They deny that this was the best rent which petitioner was able to obtain from the premises after diligent effort to rent the same to the best advantage."

We can not avoid the conclusion that the pleadings present a question of fact as to whether or not "the sums obtained . . were the best rent which petitioner was able to obtain for the premises," etc. For this reason alone we reverse the judgment sustaining the general demurrer to the answer and striking the plea and answer. It follows that the verdict was erroneously directed.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*