20703. YOUNG COMPANY *v.* MINCHEW.

Decided October 8, 1930.

*Slater, Moore, Oberry & Wheless,* for plaintiff in error.

*L. E. Heath, Mingledorff & Gibson,* contra.

Luke, J. D. F. Minchew brought his action for damages against J. L. Young Company, a corporation, and J. L. Young. At the conclusion of the plaintiff's evidence he waived any claim against J. L. Young. The jury rendered a verdict "in favor of the plain-- tiff for $200 and interest," and the court entered up a judgment against J. L. Young Company. The company excepts to the over- ruling of its motion for a new trial. The record brings also to our consideration the overruling of a demurrer to the petition.

Omitting the formal parts of the petition and some of its allegations that need not be considered in passing upon the ques- tions presented, the petition makes this case:

2. Defendants have damaged petitioner in the sum of $300, with interest thereon at seven per cent. since October 23, 1926.

3. On October 24, 1924, petitioner became the owner of three shares of stock in the Alam State Bank, said stock being of the par value of $100 per share.

4. At said time petitioner was indebted to J. L. Young Company on open account in a sum exceeding $300, and said company had instituted suit against petitioner to the March, 1924, term of the city court of Douglas through its attorneys of record, Dart & Slater. No judgment was taken in said suit, and in the latter part of October, 1924, or in November of that year, petitioner negotiated and consummated a settlement of said case with J. L. Young Company through its attorney, John R. Slater, whereby petitioner conveyed to defendants said three shares of stock, and executed and delivered to defendants some two or three checks payable to J. L. Young Company or its attorney. John R. Slater, as attorney for defendants, requested petitioner to sign a transfer of the stock certificate in blank, in order that J. L. Young might determine later to whom he wished said stock transferred and then fill in the blank; and said certificate was assigned in blank.

5. "The assignment and delivery of said stock was intended to pass the full title, and did pass the full title out of petitioner and into J. L. Young Company or such other person or concern as the said J. L. Young or J. L. Young Company might determine to fill in the blank, and thereafterwards petitioner exercised no further control over said certificate of stock."

6. All of said checks given by petitioner to complete said settlement of said suit were paid except one check for $20, and petitioner does not know whether this check was presented for collection. He shows, however, that he had sufficient funds in the bank at all times to pay said checks; and he now offers to pay said check, with interest, and "to pay the same into court."

7. Petitioner did not give said bank legal written notice that he had sold said stock, because he assumed that defendants would have the stock transferred on the books of the bank, there being a duty resting upon them to present said certificate of stock to said bank within six months of said transfer and have same transferred on the books of the bank, so as to relieve petitioner of his statutory liability as a stockholder.

8. In the early part of July, 1926, said bank failed and was taken over by the superintendent of banks.

9. Defendants did not have said stock transferred on the books of the bank as it was their duty to do, and it appeared on the books of the bank as petitioner's property.

10. Said superintendent of banks made an assessment against petitioner on said three shares of stock, and petitioner requested defendants to pay same, but they refused to do so. When an execution was issued against petitioner on said assessment on October 23, 1926, petitioner requested defendants to pay said execution, but they refused to do so, and petitioner paid said execution in full on April 2, 1927, in order to protect his property.

11. For the reason that said stock had never been transferred on the books of the bank, petitioner was primarily liable for said assessment, but defendants are liable to petitioner for the money paid out by him on said assessment, with interest thereon.

The petition was amended substantially as follows: Said settlement between petitioner and defendants was agreed upon before petitioner procured said stock, and petitioner procured said stock and had same issued in his name for the specific purpose of selling the same to J. L. Young Company in settlement of said suit; and when petitioner got said stock it was immediately transferred in blank and delivered to J. L. Young Company through its attorney at law, John R. Slater. At said time said bank was apparently solvent, and petitioner had no other stock therein and did not attend any directors' or stockholders' meetings, and had no opportunity to learn anything about the solvency or insolvency of said bank. It was impracticable for petitioner to notify the bank that said stock had been transferred, for the reason that he did not know whose name was to be inserted in the blank as transferee.

The demurrer to the petition is substantially as follows: 1. The petition sets out no cause of action. 2. "In no event would the plaintiff be entitled to recovery sued for by the application of any rule or measure of damages, as applied to the allegations of fact in said petition."

The gist of the answer is: that "D. F. Minchew approached John R. Slater, of counsel for J. L. Young Company, . . and offered to deliver three shares of the capital stock of the Alam State Bank to J. L. Young Company, and to pay a stipulated sum in cash settlement of the amount due said J. L. Young Company by said D. F. Minchew," and that J. L. Young Company and its said counsel "declined to accept said shares of stock and the checks aforesaid in settlement of the amount sued for, . . but did then and there agree . . to accept said checks to apply on the amount

due, and to endeavor to sell . . the shares of stock for the purpose of applying the proceeds therefrom on said indebtedness, with a further . . agreement that if it were possible to sell and dispose of said shares for a reasonable amount, the amount so received would be accepted as a compromise settlement . . of said sum sued for, and that said shares would be accepted in no other manner, and on no other terms." The answer further sets out that said transfer of said stock was "to enable the defendant, J. L. Young Company, to secure any equity that might exist therein for application on the account due and owing by D. F. Minchew to the said J. L. Young Company, without incurring any stockholder's liability on account thereof."

1. We shall first consider the demurrer. Counsel for plaintiff in error insist in their brief that the demurrer is good for the reason that the petition is duplicitous, in that it does not allege specifically to whom the bank stock in question was sold. The demurrer is a general one, and duplicity is not necessarily a fatal defect in a petition. In the absence of a special demurrer upon the ground of duplicity, the question of duplicity is not properly before this court. In this connection see *City of Albany* v. *Jackson*, 33 *Ga. App.* 30 (1) (125 S. E. 478). Counsel further insist the alleged act of J. L. Young Company's accepting the bank stock in settlement of the account was ultra vires. The petition does not set out a copy of the charter of J. L. Young Company or the material part of the charter. The courts of this State adhere strictly to the rule that the pleadings alone are to be considered on demurrer. See *Cann* v. *Macon Academy Music Co.*, 38 *Ga. App.* 4, 9 (142 S. E. 203), and citations. Therefore we can not hold on demurrer that the act in question was ultra vires. We think that the demurrer was properly overruled.

Before considering the other questions raised by the record, we deem it proper to set out some of the evidence adduced at the trial. The material part of the testimony of D. F. Minchew is as follows: "There was a settlement made of the indebtedness declared in that suit by that certificate of stock, and one check that has been credited on the ledger, and one check that was attached to the certificate for $20. . . After I signed the transfer form in blank, I delivered the certificate of stock to John R. Slater, together with the check for $20, in settlement of the claim. I bought the certificate of stock

to put on this account. . . The transfer was signed in blank because Mr. Slater told me that Mr. Young said to leave that off, because he did not know whether J. L. Young Company would want the company to hold the certificate or not, and, if they did not, he would take it himself and fill in his name as the owner of it. . . Mr. Young told me that he told Mr. Slater to take the certificate in part settlement of the account. At the time I indorsed the certificate and delivered it to Mr. Slater I spoke about having the transfer made on the bank books. . . Mr. Slater said he would just deliver it to Mr. Young and ask him to do that, and he would have it done on one of his trips down there. Since that stock was transferred and delivered as stated, I have had no control of it; nor have the certificate or the checks been tendered back to me. . . The $12 check was paid and credited. The $20 check has not been paid. It was never tendered back to me. I have kept an account at the bank continuously, sufficient to take care of that check. It would have been paid if presented. . . After the execution was issued based on that assessment. . . I paid it. . . Referring to my conversation with Mr. Young relating to his authorizing Mr. Slater to purchase that stock on that indebtedness, . . I asked him if he did not authorize Mr. Slater to take it, and he said he did, and said he would have given me credit with the certificate if Mr. Slater had turned it over to him, and would very likely have gotten his money out of it, but Mr. Slater did not deliver it to him. After the certificate of stock was signed in blank and delivered, on or about the 24th of October, 1924, and the checks were given to complete the settlement, . . I have never had a notice of intention on the part of the plaintiff in that suit on the account against me to press that suit for trial. J. L. Young Company, or their counsel, have never said anything about the collection of that account as sued from the time I delivered the certificate to them. . . I went to see Mr. Young about this matter, and he said that he told Mr. Slater to take this certificate on the claim. . . I knew that Mr. Young was not dealing for himself, but for J. L. Young Company. If there is any liability it could be against J. L. Young Company or J. L. Young. The way I made the trade with Mr. Slater it was left open to apply to either. I did not owe J. L. Young anything, but he had authority to handle all matters of the business just as he saw fit. . . Mr.

Slater was the one I saw when all this negotiation for settlement was up. Mr. Slater said that he had no authority, but that he would see Mr. Young; but when he told me he was authorized to take it, I took his word for it. Mr. Young said he was himself."

Plaintiff introduced in evidence the following: (1) Said stock certificate for three shares of stock in the Alam State Bank, dated October 24, 1924, and indorsed in blank by Minchew. (2) The account of J. L. Young Company against D. F. Minchew, which was identified by Minchew as being the only account he owed J. L. Young Company, and which showed on its face that it was balanced. (3) The original suit against D. F. Minchew for $314.60, which Minchew testified he settled. (4) A page from the civil docket of the city court of Douglas, showing the suit filed by J. L. Young Company against D. F. Minchew, with the usual entries thereon. (5) The general execution docket of Coffee County showing the execution against D. F. Minchew for $300, marked "satisfied and cancelled, April 2, 1927."

When a motion to nonsuit was made, D. F. Minchew disclaimed all right to hold J. L. Young liable as a party defendant.

The following is the gist of the agreed statement of facts: (a) Said certificate of stock was issued and delivered to plaintiff on October 24, 1924, and when the bank became insolvent this stock stood in the name of D. F. Minchew on the books of the bank. (b) D. F. Minchew was assessed $300 on said stock by the superintendent of banks. (c) An execution for $300 was issued against D. F. Minchew on said stock, and the same was recorded in Coffee county, the residence of Minchew.

The gist of J. L. Young's testimony is that he was manager and secretary and treasurer of J. L. Young Company when the suit against D. F. Minchew was filed; that the $12.50 check was given to settle an item which was not in Mr. Slater's hands; that he never authorized Mr. Slater to accept said stock for J. L. Young Company or himself, and did not tell Mr. Minchew that he had; that the stock never came into his hands; that on December 31, 1926, he charged the account against Mr. Minchew off his books; that Mr. Slater asked witness about taking the stock, and witness told Slater that it was up to him, if he could place it—that he did not want any stock; that Mr. Slater was authorized to accept cash or good checks; that witness told Slater that he would not have the stock trans-

ferred; and that after Slater had informed witness that he, Slater, had taken that stock and those checks, he did not consider the suit against Mr. Minchew as settled. This witness further swore: "I spoke to him (Slater) one time, and said, 'John, if you took that stock on Mr. Minchew and have not disposed of it and will turn it over to me, I will try to dispose of it,' and he said, 'Well, I am going to attend to that.'" At this stage of the case counsel for the plaintiff disclaimed the right to recover more than $200 principal in the present suit.

The defendants introduced in evidence the charter of J. L. Young Company. This charter permitted J. L. Young Company to carry on a wholesale grocery business, with the privilege of doing a general retail business. The charter was in the usual form, and authorized the corporation "to do all other things that may be necessary for the successful carrying on of said business."

Mr. L. E. Heath, the original counsel for D. F. Minchew in this case, testified as follows: "When the superintendent of banks issued the execution I went back to Mr. Young about it. I told him that Mr. Minchew was contending that Mr. Young authorized Mr. Slater to accept the stock in part settlement of the suit, and I wanted to know of him if he did, and Mr. Young said that he did, but that Mr. Slater had been negligent and did not turn the stock over to him. He said he asked him two or three times about it, and was going to get another lawyer . . to see if he could get a settlement. He stated that if Mr. Slater had turned the stock over to him he would have had it transferred on the books of the bank, and could have perhaps traded the stock before the bank failed. He said he felt like Mr. Slater ought to have to pay Mr. Minchew."

2. The first special ground of the motion for a new trial alleges that the court erred in overruling movant's motion to continue the case because of the absence of John R. Slater, a material witness, and also of counsel for movant. It not appearing from the ground that Mr. Slater was leading counsel in the case, the court did not err in refusing a continuance because of the absence of counsel. See Civil Code (1910), § 5718. This conclusion is also sustained by what follows: Dr. John R. Smith, the only physician making an affidavit upon the question of a continuance, stated that he was a practicing physician of Douglas, Ga.; "that he observed John R.

Slater professionally on October 10, 1929, two days before he departed for a Baltimore hospital for treatment;" that he "was suffering from a nervous disorder;" and that "his condition was such that it would have been unwise to have subjected him to examination as a witness in any proceeding before a commissioner or in open court;" and that in his opinion "it would have been equally unwise and unsafe to have undertaken such examination at any time within several months prior to the date mentioned." It may be noted in this connection that the case was actually tried on February 27, 1930. The written motion wherein the grounds for a continuance are set out is sworn to only by J. L. Young, "who on oath says that the allegations contained in the within and foregoing motion are true, so far as they come within his knowledge, and, so far as derived from the knowledge of others, he believes them to be true." Counsel for movant stated in their place that they could not procure the testimony of Mr. Slater because he was under treatment in a hospital in Baltimore, and "for the past three months had not been allowed to receive any communication from any source." Counsel further stated that "it was their information that Mr. Slater would be allowed by his physicians to return home in the near future." It is fairly deducible from the doctor's affidavit that he had not seen Mr. Slater since he left for Baltimore on October 10, 1929. Mr. Young does not positively and unequivocally make oath to the truth of the allegations of fact set out in the motion for a continuance. The statement of counsel, that "it was their information that Mr. Slater would be allowed by his physicians to return home in the near future," did not meet the requirement of the Civil Code (1910), § 5715, that the applicant "expects he will be able to procure the testimony of such witness at the next term of the court." In addition to what has been said above, Mr. L. E. Heath, of counsel for defendant in error, stated in his place "that the case had been continued at the last two terms of the court on account of the absence of the same witness, John R. Slater," and that at the term of court immediately preceding the one at which the case was tried the case was "put upon terms."

"A motion for a continuance is addressed to the sound legal discretion of the court, and his judgment overruling the motion will not be disturbed unless it appears that there was a manifest abuse of his discretion." *Fordham* v. *State,* 148 *Ga.* 758 (2). Consider-

ing the motion for a continuance in the light of the foregoing well-recognized rule, we can not say that the court erred in refusing to continue the case.

3. The second special ground avers that the court erred in allowing the witness D. F. Minchew to testify: "The transfer was signed in blank because Mr. Slater told me that Mr. Young said to leave that off because he did not know whether J. L. Young Company would want the company to hold the certificate or not, and if they did not he would take it himself and fill in the name as the owner of it." The objections to the evidence were that it was hearsay, and that it had not been shown that Mr. Slater had authority to make the transaction. Mr. Minchew testified that Mr. Young told him that Mr. Slater had authority to accept the bank stock in part settlement of Minchew's account. Mr. Heath testified to the same effect. Mr. Young testified that he was manager and secretary and treasurer of J. L. Young Company, and it is inferable from his testimony that his authority was extensive both in the general conduct of the business and in the transaction in question. The witness, Minchew, after testifying that he had worked for J. L. Young Company for many years, swore that Mr. Young "had authority to handle all matters of business just as he saw fit." In short, our opinion is that in the light of the other testimony in the case this ground discloses no reversible error. In this connection see *Alexander* v. *Richardson*, 37 *Ga. App.* 407 (140 S. E. 638).

4. The third special ground avers that the court erred in allowing the witness Minchew to testify: "Mr. Young told me that he told Mr. Slater to take the certificate in part settlement of the account." It appearing that the only objection interposed was that "the question was leading," this ground is incomplete for the reason that the question was not set out in the ground. However, by way of reply to the contention (not objection) that the testimony was inadmissible to prove "the agency between John R. Slater and J. L. Young Company," we will state that Mr. Heath later testified without objection substantially as did Mr. Minchew. This ground discloses no reversible error. ·

5. The fourth special ground, complaining that certain testimony of Mr. Minchew "was not in conformity with the allegations" of the petition, discloses no reversible error.

6. The fifth special ground complains of an excerpt from the charge of the court because it "negatives the question of ultra vires," and because it is argumentative and not "sound as a principle of law." The court's charge upon ultra vires acts was full, fair and correct, and for no reason urged in this ground did the court commit reversible error.

7. The sixth special ground complains that an excerpt from the charge of the court confused ultra vires acts with the unauthorized acts of an agent, and that the court should have limited said excerpt to "intra vires acts of the corporation." The court had already properly defined ultra vires acts, clearly told the jury that a corporation was in no way bound by such acts, charged that "neither the doctrine of estoppel or ratification" could make such acts binding upon the corporation, and further instructed the jury that persons dealing with corporations were presumed to have notice of their charter powers and restrictions. The instructions referred to immediately preceded the excerpt complained of. This ground is without merit.

8. The last special ground complains of this excerpt from the charge: "If you should find in favor of the plaintiff, as you have already been instructed, the verdict would be against the defendant, J. L. Young Company." It is contended that this excerpt was confusing, argumentative, and "intimated an opinion by the court as to what kind of a verdict the jury should return." The plaintiff had acknowledged that he had made out no case against J. L. Young, and the evident purpose of the court was to tell the jury that if they should find for the plaintiff, their verdict would be against the defendant J. L. Young Company alone. This excerpt is not subject to any criticism made of it in this ground.

9. Before discussing the general grounds of the motion for a new trial, we shall briefly advert to the contention of counsel for defendant in error that no ground depending upon the evidence should be considered, because no proper brief of the evidence was made. This contention is based upon the fact that the brief of evidence contained a copy of the charter of J. L. Young Company in full. The best and fairest way to show the powers of the corporation and the limitations upon its powers was to exhibit the charter. It may be that some parts of the charter might have been omitted, but it was not long, and we do not agree with the contention

urged.  See *Securities Trust Co.* v. *Marshall,* 30 *Ga. App.* 379 (1) (118 S. E. 478).

10.  The controlling question under the general grounds of the motion for a new trial is whether or not the act of settling the account of J. L. Young Company pleaded by the defendant was ultra vires.  It appears from the charter of J. L. Young Company that it was empowered to engage in the wholesale and retail grocery business, and "to buy and sell for cash or credit  .  .  and to do all things connected with the grocery business, and  .  .  all other things needful and necessary in operating and carrying on said business."  Among the powers common to all corporations are these: "to receive donations by gift or will, to purchase and hold such property, real or personal, as is necessary to the purpose of their organization, and to do all such acts as are necessary for the legitimate execution of this purpose."  Civil Code (1910), § 2216.  Section 2823 (5) of the same code, having reference to corporations created by the superior court, contains this very similar provision: "Corporations thus created may exercise all corporate powers necessary to the purpose of their organization.  .  ."  In *Kohlruss* v. *Zachery,* 139 *Ga.* 625, 632 (77 S. E. 812, 46 L. R. A. (N. S.) 72), the court in referring to these two code sections uses this language: "The word 'necessary,' as employed in these two sections, is to be given a reasonable construction, and not to be so construed as to hamper and obstruct, or practically prevent, the profitable and reasonable exercise of the corporate powers and the conduct of the corporate business."  The J. L. Young Company was a private corporation engaged in the grocery business for profit.  Since it had the right to sell on credit, it necessarily had the power to collect its bills.  In the event that it could not collect its bills in money, we see no reason why it could not accept property other than money either in full or partial settlement of accounts due it.  In the case at bar a suit against Mr. Minchew failed to produce the money.  We see no legal reason why, in such a case, J. L. Young Company did not have the legal right to settle its account for bankstock and good checks, if it saw fit to do so.  The case of *Savannah Ice Co.* v. *Canal-Louisiana Bank & Trust Co.,* 12 *Ga. App.* 818 (79 S. E. 45), which is cited and relied on by plaintiff in error, states clearly much of the law relating to ultra vires acts of corporations, and the opinion is most instructive.  However, it must be

borne in mind that the turning point in that case was that the act under consideration was purely an accommodation indorsement. In addition to what has been already said, we shall digress here long enough to set out the following statement of J. L. Young as indicative of the relation he bore to the J. L. Young Company: "I have been general manager of J. L. Young Company since it was organized in 1912. I was the only one who had authority to give management in a general way to the business, and have transacted all business since it has been organized. The company, or the directors, never question my authority."

Our conclusion is that the act in question was not ultra vires; that there was evidence from which the jury had the right to conclude that Mr. Slater had the authority to enter into the contract pleaded in the petition; and that for no reason assigned did the court err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*