24202. ELROD *v.* ANCHOR DUCK MILLS *et al.*

DECIDED FEBRUARY 8, 1935.

*O. Lee White,* for plaintiff.
*Maddox, Matthews & Owens,* for defendants.

JENKINS, P. J. This is a suit against the Anchor Duck Mills, a corporation, and also its assistant superintendent, Hart, for damages from alleged severe leg and body injuries on account of being knocked down by Hart's automobile. The petition alleged that Hart drove his car against the plaintiff not only negligently, but also deliberately, wilfully, maliciously, and intentionally, while the plaintiff was standing on the city sidewalk in front of the entrance gate to the mill property. There was no demurrer to the petition. The answers of the defendants denied liability, and set up that, if the plaintiff was injured, it was the result of his own recklessness and failure to exercise ordinary care. A nonsuit was granted as to both defendants, after the completion of the testimony of the plaintiff, the only witness. The essential parts of his testimony are as follows: that a strike was in progress at the time of the alleged injury; that he was standing with a number of other persons on the city sidewalk, his own position being "about middleways the driveway" and "three feet" out from "the center of the gate" entering the mill premises; that Hart, the assistant superintendent of the corporation, drove up in the road "about 12 feet from the sidewalk and blowed his horn, and stopped just long enough for Mr. Cliff Spence to get in his car, and his brother was in the car, and when Mr. Spence got in the car, he put his car in second, I heard him change the gear to second speed, and I tried to get out of the way, . . and it knocked my feet out from un-

der me," inflicting leg and foot injuries as testified; that "in reaching the gate. . . Mr. Hart came east, but he . . had to make a curve there at the gate, and he run over three of us, knocked three of us down. When he made the left-hand bend at the gate before he reached the point of knocking me down, he stopped and blowed his horn a number of times, I reckon two or three times, I don't remember, and stopped still long enough for Mr. Spence to go and get in the car, . . and when he started on, he went over there, went through the line and I would say in second gear to my knowledge. He blew the horn before Mr. Spence got in the car and did not blow it afterwards. Mr. Hart did, not warn me to get out of the way after he started in there, and did not after Mr. Spence got in the car, never did blow his horn any more. . . When I saw that Mr. Hart had thrown his car in gear and started towards me, I did my dead level best to get out of the way of it. Of course I went sideways, and the fender hit my leg and caused the injuries here with my leg and spun me around." On cross-examination, the plaintiff testified, that, while he was the general chairman and organizer of the union and "the only leader they had in the strike at that time," he "did not pull the strike," was "down there about five o'clock just to be with the other boys, . . was not there to prevent other people from going in there to work . . advised them to go down there and not have any trouble, I went down there as peacemaker. . . I was not trying to stop him, I was telling them to try not to have any trouble. . . I did try to get out of the way myself. . . I didn't think anybody around there had little enough sense to drive through a crowd. I knew he was heading for the gate to go to his work, but still I didn't think he would drive through the line of men. .' . I suppose twenty-five or thirty. . . He drove up and stopped fully twelve feet from the street, and blew his horn, and I supposed he wanted to try to get in, but I didn't think he had little enough sense to run over me. He never spoke, never said 'I am here to run over you,' or anything; not a word was said. Then he put the car in second and advanced towards the gate." There was no evidence as to the speed of the car when it advanced across the sidewalk, except that the car "shot through there in second gear" with sufficient speed to knock three men down, including the plaintiff, and inflict the injuries which he alleged and to which he testified.

1. There was no error in granting a nonsuit as to the defendant corporation, since the evidence showed, without dispute, that the individual defendant, who drove the automobile inflicting the alleged injuries on the plaintiff, owned the car, and although he was the assistant superintendent of the corporation, he was not acting within the scope of his authority as agent in inflicting the alleged tort, but had only started on his way to his daily work; and the evidence failed to support the averments of the petition that he was then acting under the actual direction of the corporation in committing the alleged tort.

2. "Upon approaching or passing any person . . travel- ing any public street or highway . . the operator of a motor- vehicle . . shall at all times have the same under immediate control." Ga. Laws, 1921, pp. 255, 256; Michie's Code, § 1770 (51). One operating an automobile has the right to assume and act upon the assumption, in the absence of anything which rea- sonably should give him notice to the contrary, that a pedestrian will exercise ordinary care for his own safety, and will not inten- tionally or negligently expose himself to danger. This duty of the pedestrian and right of reliance thereon by the driver will not relieve the driver of his correlative duty, under the statute and general rules of law, to give proper warning of his approach and to keep his car under immediate control while approaching the pedes- trian, in exercising the care which every prudent person would do under the same or similar circumstances. The pedestrian likewise has the right to assume that the driver will exercise ordinary care in the operation of the car and in not striking him; but this does not relieve the pedestrian of his own duty to exercise ordinary care after his danger has become apparent or by ordinary diligence should have become apparent, and not to expose himself to the dan- ger purposely, recklessly, or without ordinary care. If he does so, and such action or omission on his own part proximately con- tributes to his injury, he can not recover for any mere negligence of the driver, but may still recover where the acts of the driver are malicious, wilful, or intentional. See 1 Blashfield's Automobile Law, 367, 368, 370, 588-590, 1010, 1013, 1016; 2 Id. 1838, 1841, 1879; 42 C. J. 920, 1031, 1035, 1036, and cit.

3. Questions of negligence, including contributory negligence, are generally questions for the jury, and can not be resolved by the

court except in plain and palpable cases. *Central of Ga. Ry. Co. v. Leonard,* 49 *Ga. App.* 689 (3) (176 S. E. 137), and cit.

4. A special demurrer is the remedy for want of certainty and definiteness in a petition. In the absence of a special demurrer on the ground of duplicity, that question is not before this court. *Citizens &c. Bank* v. *Union Warehouse Co.,* 157 *Ga.* 434, 456 (122 S. E. 327) ; *Young Co.* v. *Minchew,* 42 *Ga. App.* 228, 232 (155 S. E. 356). Although the instant petition charged in one count that the acts of the defendant driver of the automobile were not only negligent, but were also intentional and wilful, the plaintiff would not be precluded by any duplicity in his pleading from recovering upon either theory or cause of action which he might sustain by evidence, in the absence of a special demurrer raising such question of duplicity. *Central of Ga. Ry. Co.* v. *Banks,* 128 *Ga.* 785 (58 S. E. 352).

5. In the instant case, under the foregoing rules, it was a question for the jury to determine from the evidence submitted, including all the surrounding facts and circumstances, whether or not the individual defendant was guilty of a lack of ordinary care which proximately contributed to the alleged injury, in failing to give proper warning to the plaintiff, who with others was standing on the sidewalk, as the defendant approached in his car from the street to cross the sidewalk and enter the mill premises where he was employed as assistant superintendent, or whether in thus driving into the premises he failed to exercise ordinary care proximately contributing to the alleged injury in failing to keep his machine under immediate control. In the event the jury had found that the defendant was guilty of such negligence, it was also for them to determine whether the plaintiff, by the exercise of ordinary care on his own part, could have avoided the consequences of the defendant's negligence after it had or in the exercise of ordinary diligence should have become known. If the jury had determined the last-mentioned issue as to the plaintiff's own negligence in favor of the defendant, or had determined that the defendant was not guilty of negligence in failing to give proper warning of his approach or in not having the car under immediate control at the time he entered upon the sidewalk, it would have been their duty, in either event, to find in favor of the defendant, unless the jury had found from the evidence that it was true, as charged in the

petition, that the defendant, in committing the alleged injury, did so wilfully and intentionally; in which latter event they should have found for the plaintiff such damages as actually resulted, even though the defendant may have given proper warning of his approach, and even though he may have had his car under such control as would have permitted the plaintiff to get out of the way by the exercise of ordinary care. This would be true for the reason that, even though the jury had believed from the evidence that the plaintiff was aware of the approach of the car into the sidewalk and could by the exercise of ordinary diligence have avoided injury to himself, but nevertheless had purposely determined to remain in the path of the approaching car, and that all of this was actually apparent to the defendant, his remedy, if such were the facts, would not have been to intentionally run the plaintiff down in a manner and with an instrumentality reasonably calculated under such circumstances to cause loss of life or serious bodily injury. If the jury had found, under all the proved facts and circumstances, that the plaintiff was in fact given proper and sufficient warning of the approach of the car, and that he was afforded fair and reasonable opportunity to remove himself from its pathway, but that the plaintiff failed and refused to do so, then, in considering and determining the further question as to whether the defendant in operating the car in the manner shown inflicted the alleged injury wilfully and intentionally, it was for the jury to consider, as one of the elements in the case and in the light of all the proven facts and circumstances, whether the defendant acted in good faith under what was then and there a reasonable assumption that the plaintiff could and would remove himself from the pathway of danger and thus avoid the injury. If in the light of all the proven facts and circumstances the defendant reasonably could and did rely upon such an assumption, then the element of wilfulness would have been eliminated. But, as already stated, if at the time of the alleged injury it had become apparent to the defendant that the plaintiff did not intend to remove himself from the pathway of the approaching car, the remedy of the defendant would not have been to intentionally run the plaintiff down in a manner and with an instrumentality reasonably calculated under the circumstances to cause loss of life or serious bodily injury. Under the evidence in the trial of the case, the question of wilfulness, as well as all other questions dealt

with in this paragraph, being issues of fact for the jury, it was error to grant a nonsuit as to the individual defendant.

*Judgment affirmed in part and reversed in part. Stephens and Sutton, JJ., concur.*